[Cite as *State v. Page*, 2018-Ohio-2866.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                      Court of Appeals No. E-17-020

    Appellee                                      Trial Court No. 2015-CR-362

v.

Kiedrin Page                                      **DECISION AND JUDGMENT**

    Appellant                                     Decided:  July 20, 2018

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Martha S. Schultes, Assistant Prosecuting Attorney, for appellee.

John D. Toth, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Kiedrin Page, appeals from the March 14, 2017 judgment of the

Erie County Court of Common Pleas convicting him of possession of heroin, R.C.

2925.11(A) and (C)(6)(a), following a bench trial, and trafficking in heroin, R.C.

2925.03(A)(1) and (C)(6)(b), and tampering with evidence, R.C. 2921.12(A)(1), following a jury trial. For the reasons which follow, we affirm.

{¶ 2} On October 14, 2015, appellant was indicted on multiple charges. Count 1, which alleged possession of heroin, was based on the events of August 4, 2015, when heroin was allegedly found when appellant was searched following his arrest on an outstanding warrant issued relating to Count 2. Count 2, which alleged trafficking in heroin, was based on allegations that on June 25, 2015, appellant knowingly offered to sell one gram of heroin within 1,000 feet of the Osborne Elementary School. Count 3, which alleged tampering with evidence, was based on allegations that on June 25, 2015, appellant hid the suspected heroin in his mouth and swallowed it, with purpose to impair its value or availability as evidence in the police investigation.

{¶ 3} Appellant moved to suppress the evidence obtained after his seizure on June 25, 2015. The trial court denied the motion. Appellant consented to a bench trial on Count 1 and a jury trial was held on Counts 2 and 3. Appellant was convicted of all three counts and sentenced to four years of community control on each of the counts. The sentences for Counts 2 and 3 were ordered to be served concurrently to each other and consecutively to the sentence for Count 1, for a total of eight years of community control. On appeal, appellant asserts the following assignments of error:

2.

Assignment of Error I

The Trial Court incorrectly denied the suppression motion in this matter. The denial of the Appellant's suppression motion in the matter was not supported by competent and credible information.

Assignment of Error II

The trial court abused its discretion when allowing evidence in violation of rule 404(B).

Assignment of Error III

The evidence was insufficient to support the school specification on the drug trafficking count of the indictment.

{¶ 4} In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress evidence obtained after he was illegally seized. He argues there were no articulable facts warranting a stop and frisk under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.E.2d 889 (1968).

{¶ 5} The review of a ruling on a motion to suppress involves a mixed question of law and fact. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 50. We must "accept the trial court's findings of fact which are supported by competent and credible evidence * * * and determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 6} The Fourth Amendment of the United States Constitution protects individuals against unreasonable police seizures and searches. *Ohio v. Robinette*, 519

3.

U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *Map v. Ohio*, 367 U.S. 643, 654-655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (applicable to the states through the Fourteenth Amendment). Any seizure that occurs "'outside the judicial process, without prior approval by a judge or magistrate, is per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions.'" *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Robinette*. The burden of establishing the exception is on the prosecution. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971).

{¶ 7} Two exceptions are presented in this case. The first exception is the investigative stop and frisk. *See Terry*, ¶ 20. This type of seizure is a reasonable seizure and search under the Fourth Amendment if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent, and the stop and frisk investigation is kept to a minimal intrusion. *Terry* at 21-22; *United States v. Sharpe*, 470 U.S. 675, 687-688, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

{¶ 8} Appellant argues the holdings in *Florida v. J.L.*, 529 U.S. 266, 268, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), and *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 42, *superseded by statute on other grounds as stated in State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, ¶ 48, apply to this case.

4.

We disagree. Those cases involve anonymous tips which were not sufficiently corroborated by the police to ensure their reliability to be part of the formation of an officer's reasonable suspicion of criminal activity. *J.L.; Jordon.* In the case before us, all of the facts were directly observed by the officers.

{¶ 9} The second exception allows an officer to stop and arrest an individual without a warrant if the officer has probable cause to believe the person has committed a felony. *Carroll v. United States*, 267 U.S. 132, 156-157, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 26. "Probable cause is a stricter standard than reasonable and articulable suspicion." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. It is determined under an objective standard of whether a reasonable police officer would have believed the defendant had committed a crime. *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 14. Running from the police, following a reasonable order to stop, is a factor which can be considered. *United States v. Simmons*, 560 F.3d 98, 106 (2d Cir.2009), citing *United States v. Muhammad*, 463 F.3d 115, 122-23 (2d Cir. 2006); *United States v. Swindle*, 407 F.3d 562, 568 (2d Cir.2005).

{¶ 10} The following evidence was admitted in this case at the suppression hearing. Detective Brotherton testified he received a cell phone with drug-related messages, after it was seized in an unrelated investigation, and recognized a phone number from prior drug investigations. The messages indicated that "KP" was selling narcotics using the phone number. Detective West, using the name "Erica," contacted

5.

KP about purchasing heroin and he responded with a message offering to sell Erica heroin at the corner of Carr and North Depot Streets. The messages sent and received by the detective were printed and submitted into evidence.

{¶ 11} The detectives began surveillance on Carr Street in an unmarked vehicle parked three-quarters of a block from the arranged meeting place. While KP was texting Erica, Detective Brotherton saw appellant half a block from the corner. He was wearing a hooded sweatshirt, blocking his identity from the officers. Appellant was walking toward the corner, looking around, and appeared to be texting when Erica received a message from KP directing her to walk toward the corner.

{¶ 12} The detective exited his car and activated his body camera. He was wearing a police badge around his neck and carrying a radio and weapon as he walked toward appellant. Appellant turned around and looked at the detective. The detective observed appellant raise his hand to his mouth. While the detective had not seen any drugs, he believed appellant was putting narcotics in his mouth to hide the evidence based on the detective's experience and training. Immediately prior to or after this action, the detective directed appellant to stop. While the detective could not recall having identified himself as a police officer, he believed he had followed his normal procedure. Appellant ran but was apprehended after he ran into a cruiser. No heroin was found after a search of appellant and the surrounding area. A detective called KP again and the call came through on appellant's phone.

6.

{¶ 13} The trial court noted at the suppression hearing that by the time appellant was seized, the detective had a reasonable suspicion that appellant was involved in criminal activity. We agree, based on the totality of the circumstances, that a reasonable officer would have had at least a reasonable suspicion, if not probable cause, to believe appellant had committed a trafficking offense. Significant in this case were the facts that appellant was in the area at the time of the planned sale, he was seen making furtive glances around while walking toward the corner, he was seen texting while the detectives received a text from KP, appellant made a furtive gesture when he realized that an officer was behind him, and appellant disobeyed the officer's command to stop, and appellant ran after seeing the officer. Therefore, we find the trial court did not err by denying the motion to suppress. Appellant's first assignment of error is not well-taken.

{¶ 14} In his second assignment of error, appellant argues the trial court abused its discretion when allowing evidence of his August 4, 2015 possession of heroin to be used in his trial relating to the trafficking charges which allegedly occurred earlier on June 25, 2015, because the evidence was only being used to prove criminal character in violation of Evid.R. 404(B).

{¶ 15} At the trial on Counts 2 and 3, an officer testified that appellant was arrested six weeks after the events of the trafficking charge, on August 4, 2015. The officer had responded to a disorderly conduct call and arrested appellant based on the warrants for his arrest which had been issued after the June 25, 2015 trafficking incident. Upon searching appellant during the in-take process, the officer discovered two packets

7.

of suspected heroin in appellant's right sock. One package was brown paper and the other was a clear plastic baggie. BCI testing confirmed that the substances in the packages were heroin, one .084 grams and the other less than one-tenth of a gram.

{¶ 16} Appellant indicated he raised this issue in a hearing regarding severance of the counts, but no transcript from such a hearing is part of the record on appeal. It appears that appellant attempted to resolve the issue by waiving his right to a jury trial regarding the possession count in order to prevent the evidence of possession from being introduced in the trial of the other two counts. The state, however, gave notice that it would introduce the possession evidence at trial of the remaining two counts as "other acts" evidence pursuant to Evid.R. 404(B) and appellant did not file any objection.

{¶ 17} At the beginning of the trial, appellant raised the issue of whether the court would allow the possession evidence to be admitted. The trial court indicated that it would consider the issue after more evidence was presented. However, on the third day of trial appellant's lead counsel was not present at the beginning of the proceedings when the evidence was introduced. Although counsel arrived before the witnessed finished testifying, counsel never objected to the testimony. Furthermore, appellate counsel has not raised the issue of ineffective assistance of trial counsel. Therefore, appellant did not preserve the evidentiary issue for review on appeal. Appellant also did not assert plain error on appeal.

{¶ 18} However, we have the discretion to sua sponte consider whether plain error occurred. Crim.R. 52(B)*; State v. Thomas,* 152 Ohio St.3d 15, 2017-Ohio-8011, 92

8.

N.E.3d 821, ¶ 32; *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 110; *State v. Sneed*, 63 Ohio St.3d 3, 10, 584 N.E.2d 1160 (1992). When reviewing for plain error, our standard of review is not whether the trial court abused its discretion in admitting the evidence. Rather, the error must have affected substantial rights; i.e., there must be a reasonable probability the error prejudicially affected the outcome of the trial. *Thomas* at ¶ 33. We need only correct the error if necessary to prevent a manifest miscarriage of justice. *Id*. at ¶ 34.

{¶ 19} Evidence of "other acts" of the defendant are not admissible at trial for the purpose of proving the defendant has a character trait and that he acted in the instant case in conformity with that character trait. Evid.R. 404(B). However, such evidence is admissible for a proper purpose, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*. This rule is to be strictly construed against admissibility. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 61, quoting *Ohio v. Broom*, 40 Ohio St.3d 277, 533 N.E.2d 682 (1988), paragraph one of the syllabus.

{¶ 20} The trial court exercises its discretion in ruling on whether to admit Evid.R. 404(B) evidence of other acts. *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 110. We give great deference to the trial court's exercise of its discretion, reversing only if it is shown that the trial court abused its discretion and material prejudice resulted. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67. An abuse of discretion standard requires that we find the trial court's

9.

decision was an "unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

{¶ 21} If the "other acts" evidence is alleged to be admissible for the purposes identified under Evid.R. 404(B) and noted above, the trial court must conduct a three-step analysis to determine if the "other acts" evidence should be admitted. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 19-20. First, the trial court should consider whether the "other acts" evidence makes a fact of consequence more or less probable? (Evid.R. 401). Second, the court should consider whether the "other acts" evidence is presented for a legitimate purpose or only to prove the defendant acted in accordance with his character trait? (Evid.R. 404 (B)). Third, the court should consider whether the "probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." (Evid.R. 403). *Id*. at ¶ 20.

{¶ 22} In the case before us, appellee argues the possession evidence was admissible to counter appellant's denial that he was a drug dealer by showing that he had access to heroin and deals with it regularly and that he had a scheme of setting up sales of narcotics and concealing the evidence. Appellee relied upon *State v. Turner*, 4th Dist. Scioto No. 08CA3234, 2009-Ohio-3114 and *State v. Reed*, 2d Dist. Champaign No. 2002-CA-30, 2003-Ohio-5413.

{¶ 23} Appellant asserts these cases involved proof of a scheme or plan, not the absence of mistake or knowledge exceptions. *Turner* at ¶ 31; *Reed* at ¶ 33. We agree. In

10.

the cases cited by appellant, the "other acts" evidence was more directly related to drug trafficking than the mere presence of drugs. *Turner* at ¶ 27, 34; *Reed*.

{¶ 24} The "absence of mistake" exception requires the defendant to have asserted he acted by mistake or accident and the "other acts" show that he acted purposely to commit the present offense by establishing a "connection, in the mind of the defendant, [which] existed between the offense in question and the other acts of a similar nature." *State v. Burson*, 38 Ohio St.2d 157, 159, 311 N.E.2d 526 (1974). Key to the exception is that the defense asserted or could have been expected to assert that the defendant acted by mistake or accident. *State v. Wright*, 4th Dist. Washington Case No. 00CA39, 2001 Ohio App. LEXIS 5699, *32 (Dec. 6, 2001); *State v. Muncey*, 12th Dist. Madison No. CA98-03-013, 1999 Ohio App. LEXIS 359, *9-10 (Feb. 8, 1999). The "mistake or accident" involved is not that the police wrongly accused the defendant.

{¶ 25} In the case before us, appellant did not testify and his counsel argued in opening statements only that the state could not prove the charges. Because appellant only asserts innocence and not that he acted as a result of a mistake or accident, evidence of a later act of possessing two concealed, small packets of heroin is irrelevant.

{¶ 26} Alternatively, appellee argues any error was harmless error because appellant was not prejudiced. We agree.

{¶ 27} At trial, the following evidence was submitted. Detective West testified as to how the department obtained information that led to the investigation of "KP" and how he sent a text to him from the officer's government-issued cell phone to attempt to

11.

purchase heroin, posing as "Erica." The text messages, which were backed up to a Gmail account, were printed and admitted into evidence and authenticated. KP offered to sell the officer one gram of heroin for $155 and, after several messages, it was finally agreed the meeting would occur at the corner of Carr and North Depot Streets. West testified he knew this location was within 1,000 feet of Osborne Elementary School because the department keeps copies of the tax maps for drug enforcement purposes. The Chief of Staff of Sandusky City Schools testified the school was in operation that day.

{¶ 28} Detectives West and Brotherton testified that they set up surveillance in the area in an unmarked vehicle. Appellant either came out of a house on Carr Street or out of an alley to the north of the house. West was parked behind appellant and observed appellant for about one minute before pulling forward. He was walking from 1515 Carr Street toward the corner meeting spot and was about one-half of a block from the corner, looking around, and using his cell phone. As West texted a message, appellant appeared to be texting the reply, and the officer received another message. West did not see anyone else walking in the area and there were no vehicles in the area. When appellant sent the message telling Erica to start walking to the corner, Brotherton got out of the vehicle and activated his body camera. West heard Brotherton identify himself as a police officer. While Brotherton believed he had identified himself as a police officer as he customarily did, he could not recall and no such statement was ever recorded by his body camera. Appellant ran and Brotherton gave chase on foot. West drove to an empty lot nearby in an attempt to cut off appellant.

12.

{¶ 29} Detective Brotherton testified that appellant looked directly at the detective after he had exited from the vehicle and his hand immediately went up to his mouth before he took off running. Brotherton ordered appellant to stop, but he did not, and Brotherton pursed him on foot. When appellant was first taken to the ground, his speech was mumbled and he would not open his mouth. Upon retracing his steps, Brotherton did not find any narcotics which had been discarded. Brotherton identified pictures taken at the scene and tattoos on appellant's hands, "K" on one hand and "P" on the other, which matched the initials of the person with whom the officers had been texting. No drugs were recovered from appellant at the scene. The police did not attempt to search appellant's phone records or determined who lived at the Carr Street house from which appellant may have exited. Brotherton testified that no one else was seen in the area at the time, but his body camera footage played for the jury reveals someone sitting on a porch when appellant was being chased. Brotherton testified someone attempted to question the man on the porch and he told the police he came out after the incident. This conversation was not recorded.

{¶ 30} West testified that while the other two officers held appellant down West attempted to keep defendant from swallowing any narcotics by holding his jaw. Appellant would not comply with orders to spit out what he had in his mouth, but eventually stuck his tongue out and the officers could not see anything. West heard another officer complain that appellant had attempted to bite the officer. No drugs were ever recovered. Appellant denied having swallowed anything and stated he was merely

13.

walking and had run because Brotherton jumped out at him and appellant did not know him.

{¶ 31} West recovered two phones, one from appellant's pocket and one that was on the ground next to him. West testified that drug dealers commonly have more than one phone. The officer made a call to KP and confirmed that appellant's phone was the same phone number to which the officer had been texting.

{¶ 32} Another officer testified he was assisting the surveillance operation that day and was located in a marked patrol car in case the subject ran. When Brotherton call out that he was in pursuit on foot, the officer drove along North Depot and was parallel to appellant when he suddenly changed direction and struck the side of the cruiser. Appellant regained his footing and continued to run until Brotherton apprehended appellant. Appellant suffered a compound fracture, but did not complain of the pain.

{¶ 33} The officer cuffed appellant and attempted to get him to spit out the narcotics Brotherton indicated appellant had put in his mouth. Appellant did not cooperate and responded with some mumbled words. When the officer attempted to put his fingers near appellant's mouth, he clamped his jaw together. The officer believed appellant was trying to bite him. Appellant eventually cooperated and stuck out his tongue.

{¶ 34} An emergency room physician testified appellant was treated on June 25, 2015, for an ankle fracture and possible heroin ingestion. She observed no signs of opiate intoxication, but she testified such signs would not show immediately if the heroin

14.

was packaged and X-rays would not show a paper or plastic bag.  She only observed some signs of intoxication during the time she sedated him to treat his ankle fracture.

{¶ 35} We find there was sufficient direct and circumstantial evidence to establish that appellant was KP, the person texting to the officer and offering to sell heroin at the meeting site, and that he swallowed the drugs he intended to sell.  Appellant has his initials, K and P tattooed on his hands; he alone was walking to the corner at the appointed time of the drug sale; he looked around as if he was looking for someone; he was texting while the officers were receiving texts; he ran when he saw a police officer; he made a furtive gesture which the officers believe, based on their experience and training, indicated appellant had swallowed the drugs; and he refused to cooperate with the officers' directives to open his mouth for several minutes.

{¶ 36} Therefore, we find the admission of the possession evidence did not prejudicially affect the outcome of the trial.  Appellant's second assignment of error is not well-taken.

{¶ 37} In his third assignment of error, appellant argues that insufficient evidence was presented to establish the school specification on the drug trafficking charge.  More specifically, appellant argues the trial court should not have admitted the modified tax map to establish the distance from the school to the transaction site.

{¶ 38} Punishment for a heroin trafficking offense, R.C. 2925.03(A)(1), is enhanced to a fourth-degree felony if the offense was "committed in the vicinity of a school."  R.C. 2925.03(C)(6)(b).  The term "committed in the vicinity of a school" is

15.

defined in part as a sale "within one thousand feet of the boundaries of any school premises, regardless of whether the offender knows." R.C. 2925.01(P). The location of the sale must be proven by the prosecution as a strict liability enhancement specification. *State v. Stigall*, 6th Dist. Lucas No. L-14-1053, 2015-Ohio-137, ¶ 12; *State v. Shannon*, 11th Dist. Portage No. 2015-P-0077, 2016-Ohio-8220, ¶ 17.

{¶ 39} A challenge to the sufficiency of the evidence is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The sufficient evidence standard has been met when the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.E.2d 560 (1979). Since the map admitted into evidence clearly shows the transaction site was within the 1,000-foot boundary of the school, the real issue presented is not sufficiency. Rather, the issue is admissibility of the evidence, i.e., whether an expert must testify regarding the calculation of the distance and whether the map is admissible as a business record.

{¶ 40} Detective West testified the drug sale location was within 1,000 feet of Osborne Elementary School based solely on his review of a modified tax map prepared by the county auditor's office and utilized by the department for drug enforcement purposes. The trial court permitted West to testify because his testimony was based on his review of the map. However, the detective neither actually measured nor estimated the distance. Therefore, we find the detective's testimony was inadmissible because it

16.

was based on hearsay rather than his own knowledge. Evid.R. 701, 801; *State v. Boyd*, 6th Dist. Ottawa No. OT-06-034, 2008-Ohio-1229, ¶ 48 (non-testifying officer actually measured the distance); *State v. Batin*, 5th Dist. Stark No. 2004-CA-00128, 2005-Ohio-36, ¶ 58-59 (detective testified based on an engineer's map and statements); *State v. Olvera*, 6th Dist. Williams Nos. WM-98-022, WM-98-023, 1999 Ohio App. LEXIS 4832, *21-23 (Oct. 15, 1999) (officer testified distanced based on a tax map but there was no evidence of how he calculated the distance or that the map was drawn to scale).

{¶ 41} However, appellee also introduced the testimony of an employee of the Erie County Auditor's Office, who was responsible for real estate property records and some mapping duties. She authenticated the deeds to the Osborne Elementary School and an aerial tax map of the area near the school prepared by the auditor's office in the regular course of business. She further testified that the corner of Carr and North Depot Streets is shown on the map as being within that boundary. The aerial map was modified by another employee who added 500- and 1,000-foot boundary lines around the Osborne Elementary School with the use of a software program.

{¶ 42} While the employee testified that she did not generate the map at issue, she was familiar with the auditor's GIS tax map database. She testified an employee could generate the marked map by selecting the location of the school and adding boundary lines with the distances based on calculations made by the computer software program. She further testified the distance data entered into the GIS mapping database are based on prior surveyor measurements entered into the computer.

17.

{¶ 43} At trial, appellant objected to admission of the tax map on the ground that this witness did not actually measure any of the distances. Furthermore, he argued no witness was called to testify regarding the accuracy of the computer software used by the auditor's office whom appellant could cross-examine.

{¶ 44} Several appellate district have found that GIS mapping systems are an acceptable and reliable method for measuring distance. *Dickerson v. Miller's TLC, Inc.*, 8th Dist. Cuyahoga No. 96995, 2012-Ohio-2493, ¶ 17 ("Google Maps, and other satellite imaging programs, are generally considered to provide accurate and reliable measurements" and expert testimony is not necessary to explain the system to most lay persons); *State ex rel. O'Brien v. Heimlich*, 10th Dist. Franklin No. 08AP-521, 2009-Ohio-1550, ¶ 20; *State v. Franklin*, 164 Ohio App.3d 758, 2005-Ohio-6854, 843 N.E.2d 1267, ¶ 11 (12th Dist.), quoting Geographic Information Systems: Coming to a Courtroom Near You (2005), 34 Colo. Law. 11, 17 ("'the * * * software has been in use for a relatively long period [more than two decades] and is generally accepted by the courts as reliable computer software'"). Furthermore, the Tenth Appellate District accepted an affidavit of an employee of the auditor's office attesting to the use of a GIS tax map database to calculate the 1,000-foot distance from a school as admissible evidence sufficient to satisfy the state's burden of proof as evidence of the 1,000-foot boundary. *State ex rel. O'Brien v. Messina*, 10th Dist. Franklin No. 10AP-37, 2010-Ohio-4741, ¶ 22-23.

18.

{¶ 45} In the case before us, an employee of the auditor's office testified about the creation of the map and was available for cross-examination. We conclude that the use of the GIS tax map database is simply a more modern method of measuring distances than a mechanical device. Any challenge to the reliability of the measuring system goes to the weight of the evidence rather than its admissibility. We find the testimony was properly admitted into evidence and was sufficient to establish that the trafficking transaction occurred within the 1,000-foot boundary of the school.

{¶ 46} Appellee also introduced the modified map into evidence under the business record exception to the hearsay rule, Evid.R. 803(6). Appellant objected on the ground that the map was generated solely for the purpose of convicting appellant.

{¶ 47} The admission of evidence is within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. The standard of review on appeal is whether the trial court committed an abuse of discretion that amounted to prejudicial error. *State v. Fowler*, 10th Dist. Franklin No. 15AP-1111, 2017-Ohio-438, ¶ 14, citing *Gordon v. Ohio State Univ.*, 10th Dist. Franklin No. 10AP-1058, 2011-Ohio-5057, ¶ 82.

{¶ 48} Records must meet four qualifications to be entered under the business record exception to the hearsay rule. Evid.R. 803(6). The record must 1) "be one regularly recorded in a regularly conducted activity;" 2) "have been entered by a person with knowledge of the act, event or condition;" 3) have been recorded at or near the time of the transaction;" and 4) "a foundation must be laid by the 'custodian' of the record or

19.

by some 'other qualified witness.'" *State v. Beasley*, Slip Opinion No. 2018-Ohio-493, ¶ 185, quoting *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 170. (Additional citations omitted.)

{¶ 49} Because the transaction occurred close to the edge of the 1,000-foot boundary in this case, the accuracy of the boundary line drawn on the map is a significant issue. *Compare State v. Brown*, 9th Dist. Summit No. 23637, 2008-Ohio-2670, ¶ 15-18 (the aerial tax map gave rise to an inference that the location of the sale was within the 1,000-foot boundary because the detective testified the site of the transaction was a house across the street from the school).

{¶ 50} Based on the testimony of the auditor employee, the surveyor's measurements were taken in the past and entered into the database and the database is kept in the ordinary course of the business of the auditor's office. No direct evidence was admitted as to the date this map was generated, but even if it was generated for purposes of this trial, the database exists independent of any criminal prosecution and the auditor's employee merely utilizes the database to create a tax map with a 1,000-foot boundary drawn around a specific point. The modified map does not, by itself, implicate that the defendant was within that boundary. Whether or not appellant was within the boundary is a fact established by the testimony of the detectives as to where the transaction occurred and locating that point on the map. Any challenge to the accuracy of the employee's creation of the map impacts its evidentiary weight rather than admissibility under the hearsay exception.

20.

**{¶ 51}** Therefore, we find appellant's third assignment of error not well-taken.

**{¶ 52}** Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                                                   _____

                                                                  JUDGE

Thomas J. Osowik, J.        

                                                                  _____

James D. Jensen, J.                                                  JUDGE
CONCUR.

                                                                  _____
                                                                  JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.