[Cite as *State v. Moore*, 2021-Ohio-1067.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-19-1195

    Appellee                              Trial Court No. CR0201801296

v.

Edward Shawn Moore                        **DECISION AND JUDGMENT**

    Appellant                             Decided:  March 31, 2021

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

LaRon C. A. Bankston, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} Appellant, Edward Moore, appeals the judgment of the Lucas County Court
of Common Pleas, sentencing him to five years in prison after he was found guilty,
following a bench trial, of trafficking in heroin, possession of heroin, trafficking in
cocaine, and possession of cocaine.

## A. Facts and Procedural Background

{¶ 2} On February 14, 2018, appellant was indicted on one count of trafficking in heroin in violation of R.C. 2925.03(A)(2) and (C)(6)(e), a felony of the first degree, one count of possession of heroin in violation of R.C. 2925.11(A) and (C)(6)(d), a felony of the second degree, one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(b), a felony of the fourth degree, one count of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(a), a felony of the fifth degree, and one count of illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1) and (F), a misdemeanor of the fourth degree. Appellant appeared before the trial court for arraignment on March 22, 2018, at which time he entered a plea of not guilty to the aforementioned charges. Thereafter, the matter proceeded through pretrial discovery and motion practice.

{¶ 3} On November 19, 2018, appellant filed a motion to suppress, requesting that the trial court suppress evidence of illegal drugs that were discovered by law enforcement officers during their search of appellant's vehicle on February 28, 2017. In support of his request, appellant asserted that the "officers did not have the constitutionally requisite reasonable suspicion or probable cause to justify confronting, detaining, and arresting him for the instant offense."

{¶ 4} The matter proceeded to a hearing on appellant's motion to suppress on November 27, 2018. Only one witness, detective Andrew Pennington of the Toledo Police Department, was called to testify at the hearing.

2.

{¶ 5} Upon arriving at the police station on the morning of February 28, 2017, Pennington received an anonymous tip from a "tax paying citizen," who stated that narcotics sales were occurring in a parking lot located at the end of Knox Street in East Toledo. The tip included a description of the vehicle from which the sales were occurring, as well as a description of the individual who was "interacting with those sales."

{¶ 6} After receiving the anonymous tip, Pennington and his partner, wearing plain clothes, traveled to the parking lot, parked their unmarked cruiser, and began observing the vehicles that were entering and exiting the lot. Over the course of several minutes, Pennington noticed that the vehicles had license plates and county stickers that suggested that the drivers did not live at that location. Moreover, Pennington observed that the drivers of these vehicles pulled into the lot and parked, but did not exit their vehicles. Pennington testified that, in his experience as a narcotics officer, such unusual activity "resonates into maybe somebody buying drugs or something illegal or contraband [of] that sort, which gives us red flags to pay attention to it."

{¶ 7} While Pennington and his partner continued to observe the goings-on at the parking lot, they were addressed by the driver of a vehicle that was parked next to their cruiser. The driver rolled down his window and asked Pennington if he had "heard from the guy yet." After Pennington responded in the negative, the driver indicated that he was going to call the unidentified individual. Thereafter, Pennington and his partner noticed a taxi pull into the parking lot, carrying a female passenger whom they knew to

3.

be a drug addict from previous interactions with her. Based upon their earlier conversation with the driver of the adjacent vehicle and their familiarity with the drug habits of the female passenger in the taxi, Pennington and his partner suspected that the occupants of the vehicles parked in the lot were awaiting the arrival of a drug dealer.

{¶ 8} Eventually, Pennington observed a blue Chrysler 200 pull into the parking lot without using a turn signal.[1] After pulling into the lot, the driver of the Chrysler backed into a parking spot near Pennington, prompting the occupants of the other vehicles in the lot to simultaneously exit their vehicles and approach. Pennington testified that several of the individuals had cash in their hand, and were "holding it out as if they were making a purchase of some sort." At that point, Pennington and his partner decided to exit the vehicle and approach the Chrysler. Pennington explained his decision to intercede prior to observing any drug transactions as follows: "We decided that we needed to probably act now instead of waiting to see if a bunch of people buy drugs because we don't want people to buy drugs and overdose and possibly cause death."

{¶ 9} As Pennington approached the Chrysler, he saw the driver, whom he identified at the hearing as appellant, and also observed an individual approach appellant and initiate a "hand-to-hand" transaction with appellant. Pennington elaborated that he observed the individual reach into the driver's side window of appellant's vehicle in an effort to exchange money for drugs. Pennington conceded on cross-examination that he

---

[1] On cross-examination, Pennington indicated that he did not issue appellant a citation for his failure to use a turn signal.

4.

did not actually observe appellant exchange drugs for money, but he clarified on redirect that it is common practice for drug users to provide payment prior to being handed drugs. At that point, Pennington and his partner identified themselves and ordered the individual and appellant to stop the transaction.

{¶ 10} Thereafter, Pennington ordered appellant out of his vehicle and separated appellant from the rest of the individuals that were standing in the parking lot at the time. Pennington subsequently learned that appellant did not possess a valid driver's license, prompting him to place appellant under arrest for operating his vehicle without a driver's license.

{¶ 11} After making the arrest, Pennington conducted an inventory search of appellant's vehicle prior to impounding it. During the search, Pennington "opened up the middle [console] and we noticed it – it was very – I'm sorry I'm trying to find the right word here. It moved; it was very loose as if it like, has been messed with or tinkered with." Pennington then maneuvered the center console and "it popped off and there was narcotics found right in that middle [console's] location." According to Pennington, the narcotics were individually packaged for sale. Pennington then seized the narcotics and waited on the tow truck to arrive. The narcotics were subsequently sent to the Toledo Police Forensic Laboratory for testing, which confirmed the presence of 14.55 grams of heroin and 2.13 grams of cocaine.[2]

---

[2] At trial, appellant stipulated to the admission of the state's laboratory report identifying the substances and their weight.

5.

{¶ 12} Following Pennington's testimony, the trial court heard arguments on appellant's motion to suppress. For its part, the state argued that Pennington possessed reasonable suspicion to stop appellant when he observed appellant commit a traffic violation by turning into the parking lot without using a turn signal. The state further contended that Pennington's arrest of appellant was justified by the fact that appellant was operating his vehicle without a driver's license. Finally, the state asserted that the narcotics were discovered pursuant to a lawful inventory search of appellant's vehicle following appellant's arrest.

{¶ 13} In response, appellant argued that the inventory search was not conducted according to Toledo Police Department policy and procedure. Further, appellant challenged the state's reliance upon appellant's violations for failure to use a turn signal and operating a vehicle without a driver's license as a justification for the inventory search, noting that appellant was not ultimately cited for either such violation.

{¶ 14} Upon hearing these arguments, the trial court took the matter under advisement. Subsequently, the trial court denied appellant's motion to suppress, and the matter proceeded to a bench trial on July 22, 2019.

{¶ 15} At the outset of the trial, the state entered a nolle prosequi as to the misdemeanor charge of illegal use or possession of drug paraphernalia. Thereafter, the state called Pennington to the stand as its first witness. In essence, Pennington recounted the same facts he had previously provided during his testimony at the hearing on appellant's motion to suppress. Additionally, Pennington testified that the parking lot

6.

where appellant attempted to sell heroin and cocaine was near a school known as the REACH Academy. Although Pennington could not provide an exact distance, he testified that the school was "within a stone's throw" of the parking lot, which he clarified to mean less than 1,000 feet. The state introduced an aerial photograph of the area, on which it placed a computerized measurement of the straight-line distance from the Birmingham Terrace parking lot to the REACH Academy parking lot, indicating that the precise distance between those two points was 802.59 feet.

{¶ 16} As its second and final witness, the state called Pennington's partner, detective Paul Martorana, to the stand. Martorana largely repeated Pennington's testimony, also indicating that the REACH Academy was "within a thousand feet" of the parking lot at which appellant was arrested.

{¶ 17} At the conclusion of Martorana's testimony, the state rested. Appellant then moved the trial court for an acquittal under Crim.R. 29, arguing that there was no evidence that appellant actually possessed the cocaine and heroin since it was not found on his person and the vehicle he was driving was not registered in appellant's name, and also that the evidence was insufficient as to trafficking because the officers did not observe any drug transactions take place prior to appellant's arrest. The trial court denied appellant's Crim.R. 29 motion, and the matter proceeded to closing arguments after

7.

appellant rested without presenting evidence.[3]  Ultimately, the trial court found appellant guilty of the trafficking and possession charges contained in the indictment.  The court then referred appellant for preparation of a presentence investigation report, and continued the matter for sentencing.

{¶ 18} Appellant's sentencing hearing was held on August 6, 2019, at which time the trial court imposed concurrent prison sentences of five years for trafficking in heroin, four years for possession of heroin, 11 months for trafficking in cocaine, and 11 months for possession of cocaine.  Additionally, the trial court ordered appellant to serve the five-year prison sentence imposed in this case consecutively to the sentence appellant was serving in case No. CR0201702256.

{¶ 19} Thereafter, appellant filed his timely notice of appeal.

### B.  Assignments of Error

{¶ 20} On appeal, appellant assigns the following errors for our review:

I.  The Trial Judge erred in denying Appellant's Motion to Suppress.

II.  The evidence presented at trial was insufficient to support a conviction.

III.  The finding of guilty for possession and trafficking [was] against the manifest weight of the evidence.

---

[3] We note that Crim.R. 29(A) does not apply to bench trials, *State v. Purdy*, 3d Dist. Allen No. 1-12-56, 2013-Ohio-4105, ¶ 33, fn. 3, and thus the trial court's denial of appellant's Crim.R. 29 motion does not affect the outcome of this appeal.

## II. Analysis

### A. Motion to Suppress

{¶ 21} In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress. The parties do not dispute that appellant was validly stopped after Pennington and Martorana observed him commit a traffic violation. Further, the validity of appellant's arrest is not challenged, as it was supported by the officers' discovery that appellant was operating his vehicle without a driver's license. Thus, the only issue here is whether the subsequent search of appellant's vehicle ran afoul of the Fourth Amendment's prohibition against warrantless searches.

{¶ 22} Our review of the trial court's denial of appellant's motion to suppress "presents a mixed question of law and fact." *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 40, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's factual findings if they are supported by competent credible evidence, and "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Wesson* at ¶ 40, quoting *Burnside* at ¶ 8.

{¶ 23} In this case, appellant argues that the trial court erred in denying his motion to suppress, because Pennington's search under the center console of his vehicle was unconstitutional without a search warrant. According to appellant, Pennington's purported inventory search of the vehicle was pretextual because the intent of the search was to find contraband, not to inventory the contents of the vehicle.

9.

{¶ 24} In response, the state contends that Pennington was permitted to check inside the center console of the vehicle during his inventory search, and further asserts that Pennington's testimony belies appellant's speculation that the inventory search was performed merely as a pretext to discover narcotics. Moreover, the state asserts that Pennington's search was permissible under the automobile exception to the Fourth Amendment's warrant requirement even if it was not permissible as an inventory search.[4] As explained below, we find that the record in this case clearly supports Pennington's search of appellant's vehicle under the automobile exception, and we therefore limit our analysis to that exception.

{¶ 25} In defending against a motion to suppress evidence that was recovered during a warrantless search, the state has the burden of showing that the search fits within one of the defined exceptions (which includes the automobile exception) to the Fourth Amendment's warrant requirement. *Athens v. Wolf*, 38 Ohio St.2d 237, 241, 313 N.E.2d 405 (1974).

{¶ 26} Under the automobile exception, police may conduct a warrantless search of a vehicle if the officers have probable cause to believe that the vehicle contains contraband. *Carroll v. United States*, 267 U.S. 132, 155-156, 45 S.Ct. 280, 69 L.Ed. 543 (1925). "Where police officers have probable cause to search an entire vehicle, they may

---

[4] Appellant's merit brief did not address the applicability of the automobile exception, and appellant did not file a reply brief in response to the state's reliance upon this exception.

10.

conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages, that may conceal the object of the search." *U.S. v. Ross*, 456 U.S. 798, 799, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The scope of the search pursuant to the automobile exception "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.*

{¶ 27} Probable cause to search exists where "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. U.S.*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Whether probable cause existed depends on the objective factors articulated by the officer. *In re L.S.*, 1st Dist. Hamilton No. C-150526, 2016-Ohio-5582, ¶ 16.

{¶ 28} At the suppression hearing held in this case, Pennington testified at length as to the observations he made prior to appellant's arrest. These observations included the anonymous tip he received, in which drug activity was reported at the parking lot, the presence of several occupied vehicles in the parking lot prior to appellant's arrival, including a taxi occupied by a known drug addict, and the conversation Pennington had with the driver of the vehicle parked next to Pennington in which the driver made comments consistent with his desire to purchase drugs. Pennington further observed all of these passengers exit their vehicle simultaneously upon appellant's arrival, approach appellant's vehicle with cash in hand, and form a line at appellant's window. One of

these passengers began what appeared to Pennington to be a hand to hand drug transaction, with the passenger attempting to hand his cash to appellant.

{¶ 29} All of these observations, when taken together and filtered through Pennington's experience in drug interdiction, were sufficient to warrant a person of reasonable prudence in the belief that appellant's vehicle contained contraband or evidence of a crime. Therefore, Pennington had the requisite probable cause to justify his warrantless search of appellant's vehicle under the automobile exception to the Fourth Amendment warrant requirement. Further, Pennington had probable cause to search the hidden compartment under the center console, as he testified that, in his experience as a police officer, contraband is oftentimes concealed in such compartments. *See State v. Davenport*, 2017-Ohio-688, 85 N.E.3d 443 (2d Dist.) (concluding that officer's testimony that, in his experience as a police officer, people routinely stored contraband in cup holders, gave the officer probable cause to search the loose cup holder compartment of a vehicle's center console under the automobile exception, after the officer detected a faint odor of burnt marijuana emanating from the vehicle).

{¶ 30} Accordingly, appellant's first assignment of error is not well-taken.

## B. Sufficiency of the Evidence

{¶ 31} In his second assignment of error, appellant contends that the state's evidence was insufficient to support his convictions.

{¶ 32} In reviewing a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 33} Here, appellant was convicted of one count of trafficking in heroin in violation of R.C. 2925.03(A)(2) and (C)(6)(e), one count of possession of heroin in violation of R.C. 2925.11(A) and (C)(6)(d), one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(b), and one count of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(a).

{¶ 34} Under R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Appellant does not dispute that cocaine and heroin are both controlled substances. However, he argues that the state's evidence was insufficient to establish that he had knowledge of the presence of these substances inside the middle compartment of his vehicle, because drugs were not found on appellant's person and the vehicle was not owned by appellant. We find this argument untenable in light of the facts of this case.

{¶ 35} As noted above, detectives Pennington and Martorana observed significant circumstantial evidence supporting a reasonable inference that appellant traveled to the parking lot on the morning of his arrest in order to sell drugs. His potential customers arrived ahead of him, waited in their vehicles in a residential parking lot where they had no other business, simultaneously exited their vehicle with wads of cash in hand, and approached appellant. Moreover, the officers observed one of these customers handing

13.

cash to appellant inside the vehicle. Taken in a light most favorable to the state, this evidence is sufficient to establish that drug activity was afoot, and that appellant knew of the existence of the cocaine and heroin in his vehicle. Thus, the state's evidence was sufficient to establish all of the elements of possession of cocaine and heroin under R.C. 2925.11.

{¶ 36} Next, appellant argues that the evidence was insufficient to establish that he trafficked in cocaine and heroin under R.C. 2925.03(A)(2), which provides that no person shall knowingly "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

{¶ 37} In essence, appellant claims that trafficking was not established by the state, because Pennington and Martorana arrested appellant before any drug transactions actually occurred. According to appellant, "it is entirely reasonable that he was there as a bookie, or as a neighborhood money-man." This argument is entirely speculative given the lack of any evidence to support it. Moreover, it fails to recognize that we are required to view the state's evidence in a light most favorable to the state. When viewed in this manner, the evidence recited above, along with Pennington's testimony that the seized drugs were individually packaged in quantities consistent with sale to end users, is sufficient to establish that appellant transported cocaine and heroin with the intention of

14.

selling it. Thus, we find no merit to appellant's sufficiency argument regarding the trafficking counts.

{¶ 38} Finally, appellant contends that the state failed to prove that the parking lot was within 1,000 feet of REACH Academy, as required in order to support the enhancement language contained in R.C. 2925.03(C)(4)(b) and (C)(6)(e). Under both sections, the felony level of the trafficking offense is enhanced "if the offense was committed in the vicinity of a school." R.C. 2925.01(P) provides that an offense is "committed in the vicinity of a school" if it is either committed on school premises, in a school building, or within one thousand feet of the boundaries of any school premises.

{¶ 39} At trial, the state introduced evidence in the form of an aerial map and testimony from both Pennington and Martorana that established the fact that the parking lot where appellant was arrested was within 1,000 feet of the REACH Academy.[5] Specifically, Pennington testified that the parking lot where appellant attempted to sell heroin and cocaine was "within a stone's throw" of the REACH Academy, and then clarified that the distance between the two points was less than 1,000 feet. Martorana likewise testified that the distance between the parking lot and the REACH Academy was less than 1,000 feet, and the aerial map introduced by the state without objection revealed a precise, straight-line distance between the two points of 802.59 feet.

---

[5] There is no dispute that the REACH Academy is a school for purposes of the felony enhancements under R.C. 2925.03(C)(4)(b) and (C)(6)(e).

15.

{¶ 40} Acknowledging the foregoing evidence, appellant challenges the state's use of straight-line distance as the appropriate measure of distance for purposes of the 1,000-feet requirement in R.C. 2925.01(P). Citing the Fifth District's decision in *State v. Goins*, 5th Dist. Morgan No. CA99-08, 2000 WL 1523159 (Sept. 29, 2000), appellant argues that straight-line distance is not the appropriate measure.

{¶ 41} In *Goins*, a ravine separated the location of a controlled buy of crack cocaine from Goins at his residence from a nearby school. *Id.* at *2. The distance between the school and the edge of appellant's property was measured with a laser speed control, but the distance between Goins' residence and the edge of his property, the spot from which the distance measurement was taken, was not measured. *Id.* A sketch of the area and the measurements were introduced, but the county sheriff admitted that the drawing was not to scale, and that neither the ravine nor the property line of the school were illustrated. *Id.* Taken together, the Fifth District concluded that "the evidence offered by the State was insufficient as a matter of law to sustain the State's charge that the offense was committed within 1000 feet of school premises." *Id.*

{¶ 42} In his brief, appellant contends that *Goins* stands for the proposition that "a perfect, straight-line measurement is the incorrect technique to use in determining whether a drug offense is committed within one thousand feet of a school." However, this is a mischaracterization of the holding in *Goins*.

{¶ 43} The salient fact in *Goins* that was relied upon by the court in arriving at its conclusion that the state's evidence was insufficient to establish the 1,000-foot distance

was that no measurements were taken between the point of sale and the school premises. Instead, the laser distance measured only the distance across the ravine from the school to the edge of Goins' property. In this case, however, the straight-line measurement introduced by the state was from the point at which appellant's attempted drug transactions were to occur to the parking lot of the REACH Academy. Thus, this case is readily distinguishable from *Goins*.

{¶ 44} Contrary to appellant's contention that a straight-line measurement is an inappropriate measure of distance under R.C. 2925.01(P), we previously approved of such a measurement in *State v. Page*, 2018-Ohio-2866, 117 N.E.3d 874 (6th Dist.). There, we found that the state's evidence was sufficient as to the 1,000-foot enhancement, where the state introduced a modified tax map of the vicinity of the drug transaction, with 500-foot and 1,000-foot boundary lines overlaid thereon using a software program.

{¶ 45} In approving of the use of such evidence to establish the 1,000-foot requirement, we acknowledged that "[s]everal appellate district have found that GIS mapping systems are an acceptable and reliable method for measuring distance." *Id.* at ¶ 44, citing *Dickerson v. Miller's TLC, Inc.*, 8th Dist. Cuyahoga No. 96995, 2012-Ohio-2493, ¶ 17 ("Google Maps, and other satellite imaging programs, are generally considered to provide accurate and reliable measurements" and expert testimony is not necessary to explain the system to most lay persons); *State ex rel. O'Brien v. Heimlich*, 10th Dist. Franklin No. 08AP-521, 2009-Ohio-1550, ¶ 20; *State v. Franklin*, 164 Ohio

17.

App.3d 758, 2005-Ohio-6854, 843 N.E.2d 1267, ¶ 11 (12th Dist.), quoting Geographic Information Systems: Coming to a Courtroom Near You (2005), 34 Colo. Law. 11, 17 ("'the * * * software has been in use for a relatively long period [more than two decades] and is generally accepted by the courts as reliable computer software'").

{¶ 46} Examining the record in this case in light of the foregoing authority, we find that the state produced sufficient documentary and testimonial evidence to establish that appellant's attempted drug sales occurred within 1,000 feet of the REACH Academy. Consequently, we reject appellant's sufficiency argument as to the felony enhancements under R.C. 2925.03(C)(4)(b) and (C)(6)(e).

{¶ 47} In sum, we find that the state's evidence was sufficient to establish that appellant possessed and trafficked cocaine and heroin on February 28, 2017, at a location that was in the vicinity of a school. Accordingly, appellant's second assignment of error is not well-taken.

## C. Manifest Weight of the Evidence

{¶ 48} In his third assignment of error, appellant argues that his convictions were against the manifest weight of the evidence.

{¶ 49} When reviewing a manifest weight claim, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest

18.

miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

{¶ 50} In support of his contention that his convictions are against the manifest weight of the evidence introduced by the state at trial, appellant adopts the same arguments he raised, and we rejected, in his second assignment of error. Given the uncontested evidence introduced by the state at trial as to each of the elements of the offenses for which appellant was convicted, we do not find that this is the exceptional case in which the evidence weighs heavily against the convictions. Accordingly, appellant's convictions are not against the manifest weight of the evidence, and we find his third assignment of error not well-taken.

### III. Conclusion

{¶ 51} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J. _____

_____
                                        JUDGE

Gene A. Zmuda, P.J. _____

_____
                                        JUDGE

Myron C. Duhart, J. _____
CONCUR.

_____
                                        JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.