IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 3, 2021 Session

IN RE TWT ACQUISITION, LLC. PROPERTY ID: 003 009.04 TAX YEARS
2014, 2015, 2016, 2017

Appeal from the Chancery Court for Houston County
No. 2018-CV-694   David D. Wolfe, Judge

_____

No. M2020-01100-COA-R3-CV

_____


Two counties assessed the same property for multiple tax years.  The taxpayer appealed the double assessments to the State Board of Equalization.  The administrative law judge determined that Houston County had assessed the taxpayer's real and personal property for more than five years before Stewart County assessed the same property.  Based on Tennessee Code Annotated § 5-2-115(d), the judge voided the later assessment.  The Assessment Appeals Commission reversed in part.  The Commission ruled that the state statute only applied to real property.  And because the personal property was located in Stewart County, Stewart County was the proper taxing authority for that property.  The trial court affirmed the agency decision.  On appeal, we conclude that Tennessee Code Annotated § 5-2-115(d) only applies to real property.  Because the agency's decision is also supported by substantial and material evidence in the record, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and THOMAS R. FRIERSON II, J., joined.

Markley Preston Runyon, Erin, Tennessee, for the appellant, Houston County, Tennessee.

Charles R. Parks Jr., Dover, Tennessee, for the appellee, Stewart County, Tennessee.

Herbert H. Slatery III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, Charles L. Lewis, Deputy Attorney General, James P. Urban, Deputy Attorney General, and Joseph R. Longenecker, Assistant Attorney General, for the appellee, Tennessee State Board of Equalization.

# OPINION

## I.

TWT Acquisition, Inc. owns and operates a manufacturing facility in the Stewart-Houston Industrial Park. Stewart County and Houston County jointly operate the industrial park, which is located on or near their shared border.

TWT's real property is partially located in both counties. Houston County has assessed TWT's real and personal property since 1997—the year in which the manufacturing facility was built. Stewart County began assessing the real property in 2014 and the personal property in 2016. Upon discovering the double assessment, TWT sought relief from the State Board of Equalization.

TWT contended that Stewart County was the proper taxing authority for its personal property based on the location of the property. Houston County responded that Tennessee Code Annotated § 5-2-115(d) made location irrelevant. Because Houston County had been taxing the personal property for more than five years, the State Board had no authority to rule that the property was located in another county. *See* Tenn. Code Ann. § 5-2-115(d) (2015). So the Board's only option was to void the later assessment. *Id.* The administrative law judge agreed with Houston County.

Stewart County appealed to the Assessment Appeals Commission. By State Board rule, for personal property that is rarely moved, "physical location is of prime importance in determining the taxable situs." *See* Tenn. Comp. R. & Regs. 0600-05-.09(2) (2017). Relying on that rule, Stewart County claimed that the personal property was located in Stewart County. Houston County reiterated its statutory argument. *See* Tenn. Code Ann. § 5-2-115(d).

The Commission concluded that Tennessee Code Annotated § 5-2-115(d) only applied to real property and that the State Board rule governed the assessment of the personal property. So based on the tax history, Houston County was the proper taxing authority for TWT's real property. But because it found TWT's personal property was located in Stewart County, the Commission concluded that Stewart County was the proper taxing authority for the personal property.

Houston County sought judicial review. The trial court affirmed the agency decision. It agreed that the statute was not applicable to personal property. And, based on the evidence in the record, the court determined that the location of the personal property appeared undisputed.

## II.

The Uniform Administrative Procedures Act ("UAPA") governs judicial review of the decisions of the State Board of Equalization.[1] *Coal Creek Co. v. Anderson Cty.*, 546 S.W.3d 87, 97 (Tenn. Ct. App. 2017); *Willamette Indus., Inc. v. Tenn. Assessment Appeals Comm'n*, 11 S.W.3d 142, 147 (Tenn. Ct. App. 1999). While the scope of admissible evidence at the trial court level is broader when reviewing a decision of the State Board, the standard of review remains the same. *See* Tenn. Code Ann. § 67-5-1511(b) (2018); *Schering-Plough Healthcare Prods., Inc. v. State Bd. of Equalization*, 999 S.W.2d 773, 776 n.5 (Tenn. 1999); *Spring Hill, L.P. v. Tenn. State Bd. of Equalization*, No. M2001-02683-COA-R3-CV, 2003 WL 23099679, at *4 (Tenn. Ct. App. Dec. 31, 2003). A court may reverse or modify the State Board's decision only

> if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5)(A)(i) [U]nsupported by evidence that is both substantial and material in light of the entire record;
> (ii) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h) (2021).

## A.

Relying on Tennessee Code Annotated § 5-2-115(d), Houston County maintains that the State Board's decision violated state law. *See id.* § 4-5-322(h)(1). Both the State Board and the trial court ruled that the cited statute did not apply to personal property. Statutory construction is a question of law, which we review de novo. *See Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 523 (Tenn. 2013); *Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002).

---

[1] Without further administrative review, the Commission's decision became the final decision of the State Board. *See* Tenn. Code Ann. § 67-5-1502(j) (Supp. 2021).

3

When interpreting a statute, our goal is to "ascertain and effectuate the legislature's intent." *Kite v. Kite*, 22 S.W.3d 803, 805 (Tenn. 1997). We always begin with the words in the statute. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010). We give those words their "natural and ordinary meaning." *Id.* Dictionary definitions can be helpful tools in this endeavor. *See State v. Majors*, 318 S.W.3d 850, 859 (Tenn. 2010). But the "meaning of individual words in a statute does not equal the meaning of the statute itself." *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 n.2 (Tenn. 2008). Context and purpose are also important. *See Lee Med., Inc.*, 312 S.W.3d at 527 ("[B]ecause these words are known by the company they keep, courts must also construe these words in the context in which they appear in the statute and in light of the statute's general purpose.").

With these principles in mind, we consider the statute at issue. The statute provides

(a) In circumstances where property is claimed to be located within the boundaries of two (2) adjoining counties and the property has been assessed for property taxation by both counties, the location of county boundaries shall be determined by the state board of equalization.

(b) If the state board determines that the entire property lies within either of the respective counties, it shall declare the assessment made by the other county void.

(c) Upon a determination by the state board that the property is partially located within the boundaries of both counties, it shall determine the number of acres or amount of property lying within each of the respective counties and determine the pro rata value of the property lying within each of the counties and assess the same pursuant to § 67-5-505.

(d) When property has been assessed in one county for five (5) years or more, the state board shall not have authority to rule that such property shall be located in a different county, but the board shall have authority to redress double assessment in these circumstances by voiding the later assessment to the extent it represents an assessment by both counties.

Tenn. Code Ann. § 5-2-115.

Houston County contends that subsection (d) applies to both real and personal property. In general, the term "property" refers to the collective "rights in a valued resource such as land, chattel, or an intangible." *Property*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Cohen v. Cohen*, 937 S.W.2d 823, 827 (Tenn. 1996) ("Property is generally understood to include anything of value."). And while it can include both real and personal property, the intended meaning depends on the context. *See Property*, BLACK'S LAW

4

DICTIONARY (11th ed. 2019) (explaining that property "may have different meanings, under different circumstances, according to the manner in which it is used" (citation omitted)). The context of this statute compels us to conclude that the Legislature intended for "property" to mean real property.

The statute as a whole suggests only real property concerns. *See State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995) ("In interpreting statutes, we are required to construe them as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose."). Peppered throughout the statute are references to boundaries and acres—both real property concepts. Real property is measured in acres. *Acre*, BLACK'S LAW DICTIONARY (11th ed. 2019). And boundaries confine real property. *Boundary*, BLACK'S LAW DICTIONARY (11th ed. 2019). The statute also presumes that the assessed property will not move. Boundary lines may move, but absent a natural disaster, real property does not.

By definition, personal property can be moved. *See Personal Property*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "personal property" as "[a]ny movable or intangible thing . . . not classified as real property"). As Houston County interprets this statute, the first county to assess personal property for five or more years becomes the sole proper taxing authority for that property regardless of the property's future location. This would be an absurd result. *See Yebuah v. Ctr. for Urological Treatment, PLC*, 624 S.W.3d 481, 486 (Tenn. 2021) ("[C]ourts are to avoid a construction that leads to absurd results.").

We need not go beyond the statute itself to conclude that it only applies to real property. Even so, we note that the placement of this statute in Title 5, part 2, further bolsters our conclusion. The surrounding statutes also focus on real property concerns, such as boundary lines, surveys, plats, and land records. *See* Tenn. Code Ann. §§ 5-2-104, -107, -114 to -117 (2015). And the only other statute that references Tennessee Code Annotated § 5-2-115 also deals with real property. *See* Tenn. Code Ann. § 67-5-806(a), (b)(2) (Supp. 2021) (concerning "property maps" that "identify parcels of land").

We conclude that Tennessee Code Annotated § 5-2-115(d) applies only to real property. So the State Board did not err in following its adopted rule for assessing tangible personal property. *See* Tenn. Comp. R. & Regs. 0600-05-.09. Because TWT's personal property rarely moved, the Board determined that the proper taxing authority depended on its physical location. *See id.* And, based on the evidence presented, the Board found that the property was located in Stewart County.

B.

Houston County also complains that the trial court found that the location of the personal property appeared undisputed. According to Houston County, it never conceded the location issue. This may be true. But as we interpret the court's order, the ruling was

based on the evidence in the administrative record, not Houston County's legal stance in the trial court.

No additional evidence was introduced at the trial court level. So our review is limited to the administrative record. *See* Tenn. Code Ann. § 67-5-1511(b). We review the agency's findings of fact under the substantial and material evidence standard. *Willamette Indus., Inc.*, 11 S.W.3d at 147. Substantial and material evidence is "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *S. Ry. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984) (citation omitted). This standard "requires something less than a preponderance of the evidence, but more than a scintilla or glimmer." *Wayne Cty. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988) (citations omitted).

The crux of Houston County's argument is that the State Board erred in determining the location of the personal property without a land survey. In lieu of a survey, the State Board based its decision on a GIS[2] map showing that TWT's manufacturing facility was located in Stewart County. Houston County did not submit any substantive contrary evidence. Houston County questions the weight of the evidence before the State Board. But we do not substitute our judgment for that of the agency as to the weight of the evidence on fact questions. *See* Tenn. Code Ann. § 4-5-322(h)(5)(A)(ii). The GIS map furnished a reasonably sound factual basis for the State Board's decision. *See S. Ry. Co.*, 682 S.W.2d at 199.

## III.

The State Board's decision did not violate state law or lack sufficient evidentiary support. So we affirm.

s/ W. Neal McBrayer
W. NEAL McBRAYER, JUDGE

---

[2] GIS is a computerized mapping system used by local governments for a variety of purposes. *See* Scott D. Makar & Michael R. Makar, Jr., *Geographic Information Systems: Legal and Policy Implications*, 69-NOV FLA. B.J.,44, 45 (1995). GIS software was developed more than two decades ago and is generally considered reliable. *See* Sally Speers Dischinger & Lyle A. Wallace, *Geographic Information Systems: Coming to a Courtroom Near You*, 34-APR COLO. LAW., 11, 16 (2005); *see also State v. Page*, 117 N.E.3d 874, 886 (Ohio Ct. App. 2018) (holding that objections to the reliability of a GIS map went "to the weight of the evidence rather than its admissibility").