[Cite as *State v. Rogers*, 2022-Ohio-4126.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                           Court of Appeals No.  E-21-027
                                                                                          E-21-031
        Appellee

                                                               Trial Court No.  2020 CR 0257

v.

Ravon Q. Rogers                                    **DECISION AND JUDGMENT**

        Appellant                                      Decided:  November 18, 2022

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Felice L. Harris, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is a consolidated appeal from a judgment of the Erie County Court of

Common Pleas which, following entry of guilty pleas, found appellant guilty of

involuntary manslaughter and robbery and sentenced him to an aggregate prison term

between 19 and 24 and one-half years.  For the reasons set forth below, this court affirms the judgment of the trial court.

## I. Background

{¶ 2} On August 13, 2020, an Erie County Grand Jury indicted defendant-appellant, Ravon "Tay" Rogers, on one count of murder, a violation of R.C. 2903.02(B), 2903.02(D), and 2929.02(B), and an unclassified felony (hereafter, "Count no. One"). Then on July 12, 2021, plaintiff-appellee, state of Ohio, filed a bill of information against appellant for one count of robbery, a violation of R.C. 2911.02(A)(2), and a felony in of the second degree pursuant to R.C. 2911.02(B) (hereafter, "Count no. Two").  Appellant waived presentation of Count no. Two to the grand jury.  Two additional felony indictments were subsequently issued by an Erie County Grand Jury for aggravated robbery and for robbery, but appellee dismissed both without prejudice as part of plea negotiations.  Appellant initially pled not guilty to all charges.

{¶ 3} The record contains the following relevant facts. In the early hours of July 23, 2020, appellant went to the home of his mother and the victim, his stepfather, in Sandusky, Erie County, Ohio, and drew the victim outside the home to talk.  The victim suffered from heart problems well-known by his family.  Appellant confronted the victim to give him "something" taken from him, either marijuana or $800 in cash, which the victim denied owing appellant.  Appellant proceeded to severely beat the victim with a blunt object, believed to be a baseball bat, and left the victim on the ground with 20

2.

discreet blunt force impacts, described by the coroner as defensive in nature: to the head, neck, back, chest, forearms, hands, right thigh, legs, and calf. Additionally, the victim suffered fractured ribs, lobe contusion to the right lung, fractures of the left distal ulna and right fourth phalange; and extensive soft tissue swelling intramuscular hemorrhages. Appellant subsequently messaged on social media to a friend that he, "Just beat the shit out of [the victim]" and, when the recipient of the message asked why appellant did that when he knew the victim was "sick," appellant replied "Took my shit," which we infer is the disputed marijuana or money.

{¶ 4} Through the assistance of neighbors, the victim called 9-1-1 and implicated appellant with the beating he received. An ambulance was summoned, and the responding police officer interviewed the victim while they waited for the ambulance. The victim again implicated appellant with the beating.

{¶ 5} The ambulance transported the victim to a local hospital, but his condition deteriorated rapidly and could not be interviewed further by law enforcement prior to his death. The victim died two days later from traumatic pneumothorax, described at sentencing as lung collapse, and catecholamine storm, described as cardiac arrhythmia. In the course of the investigation, appellant repeatedly insisted to law enforcement that he was not present at the home or, alternatively, acted in self-defense from the victim's unprovoked attack on him.

3.

{¶ 6} After the parties conducted discovery and held plea negotiations, appellant initially appeared before the trial court on July 12, 2021, but did not offer any guilty pleas at that time because of the recently filed bill of information for Count no. Two and needing additional time to consider the proposed plea agreement, summarized by the trial court as, "felony of the first degree, involuntary manslaughter, felony of the second degree, robbery, possible consecutive sentences of up to 19 to 24 and a half years under Reagan Tokes Law in effect since March 22, 2019, and deferring to the victim and the Court for sentencing."  Then, on July 16, 2021, appellant offered a guilty plea to involuntary manslaughter, a first-degree felony violation of R.C. 2903.04(A) and 2903.04(C), and a lesser, amended offense to Count no. One. Appellant also offered a guilty plea to Count no. Two, robbery.  The trial court conducted a lengthy plea colloquy, including addressing the possibility of consecutive sentences in the context of indefinite sentencing resulting in an aggregate prison term between 19 and 24 and one-half years. After appellant's assent in the record to all of the trial court's questions, the trial court accepted the guilty pleas and found appellant guilty of both offenses.

{¶ 7} The trial court received additional briefing on sentencing matters related to appellant's recommended sentencing range for seven to 10 years and appellant's questioning the constitutionality of R.C. 2967.271, a part of the Reagan Tokes Law.  At sentencing on August 12, 2021, without objection, the trial court repeated the stipulation first announced at the plea hearing: that consecutive sentences may be imposed pursuant

4.

to *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266. The trial court then denied appellant's motion challenging the constitutionality of the Regan Tokes Law, which the Ohio Supreme Court had not yet decided. Following a lengthy sentencing hearing with statements from potential witnesses, victim statements, appellant's statement, the presentence investigation report, appellant's sentence mitigation arguments, the sentencing guidelines and mandates collectively under R.C. 2929.11, 2929.12, 2929.13, 2929.14, and 2929.144, the trial court sentenced appellant as follows:

> The Court finds that the appropriate sentence on Count 1, felony of the first degree, the Court imposes the * * * maximum sentence of 11 years; on Count 2, the maximum sentence of 8 years. The Court finds that consecutive sentence is necessary, that's 19 years, and, of course, under Reagan Tokes, 5 and a half years onto that for the felony of the first degree makes the sentence to be 19 years to * * * 24 and a half years.

{¶ 8} The trial court's August 13 journalized sentencing entry states, among other matters,

> **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED**, based on the foregoing that: Defendant having been *found guilty* as to the following: Count **#1 Involuntary Manslaughter – As Amended, Felony 1**, in violation of O.R.C. § **2903.04(A)/(C)**. * * * Defendant is sentenced to the Ohio Department of Rehabilitation and

Correction to be imprisoned and confined for a **Minimum Prison term of 11 years** to the **Maximum Prison term of 24 years 6 months** (Reagan Tokes law); Count **#2 Robbery, Felony 2**, in violation of (Emphasis sic.) O.R.C. § **2911.02(A)(2)/(B)**. * * * Defendant is sentenced to the Ohio Department of Rehabilitation and Correction to be imprisoned and confined for a definite sentence of **8 years** of which is Mandatory **0**. * * * The **Prison** sentence imposed in this case is **19 years** to **24 years 6 months** of which **0** is Mandatory. * * * The *Qualifying Offenses(s)* are Count(s) **#1, 2**. The **11** years prison term is the ***Minimum Prison Term*** (Specifications not included). The **19** years prison term is the ***Aggregated Minimum Prison Term*** (combination of all consecutive indefinite minimum and definite terms). The **24** years **6** months prison term is the **Maximum Prison Term** (Specifications & PRC time not included). (Emphasis sic.)

{¶ 9} Appellant then timely filed this appeal setting forth four assignments of error:

> I. The trial court plainly erred in failing to merge Mr. Rogers's convictions for Involuntary Manslaughter and Robbery.

> II. Ravon Rogers's plea was not knowingly, intelligently, and voluntarily made in violation of the Ohio and United States Constitution.

6.

III. Mr. Rogers's sentence is contrary to law and fails to comply with R.C. 2929.14 and R.C. 2929.144.

IV. The Reagan Tokes Act is unconstitutional as it impermissibly violates the Separation of Powers doctrine and the Due Process Clauses of the United States and Ohio Constitutions.

## II. Felony Sentencing

**{¶ 10}** The essence of all four assignments of error challenge, as contrary to law, different aspects of appellant's felony sentence, which we will address out of order.

Reviewing the imposition of a felony sentence, we use the standard set forth in R.C. 2953.08(G)(2). *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 16. R.C. 2953.08(G)(2) allows us to "increase, reduce, or otherwise modify a sentence," or "vacate the sentence and remand the matter to the sentencing court for resentencing" if we clearly and convincingly find either "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant," or "(b) That the sentence is otherwise contrary to law."

*State v. Printke*, 6th Dist. Lucas No. L-21-1233, 2022-Ohio-2981, ¶ 10. A sentence is "contrary to law" when imposed by a trial court "based on factors or considerations that

are extraneous to those that are permitted by R.C. 2929.11 and 2929.12." *State v. Bryant*, Slip Opinion No. 2022-Ohio-1878, ¶ 22, citing *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 34 (a violation of statute or legal regulations at a given time satisfies a finding of "otherwise contrary to law").

{¶ 11} As discussed below, we do not find clearly and convincingly appellant's felony sentence is otherwise contrary to law.

### A. Merger of Guilty Pleas

{¶ 12} Appellant's first assignment of error argues the trial court's failure to merge his guilty pleas and to issue a concurrent sentence term of seven to ten years constituted plain error as a matter of law, citing *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 13.  Appellant argues the record contains "no specific facts * * * that the robbery was committed with separate conduct, animus, or import" as involuntary manslaughter because: (1) his purpose, or animus, did not change during the course of his actions; (2) there was only one victim, whose pre-existing poor health issues were "precipitating factors that led to his death"; and (3) any physical harm to the victim only occurred after the victim refused to return what appellant believed the victim owed. We disagree.

{¶ 13} Plain error is an error affecting substantial rights. *State v. Scott*, 6th Dist. Lucas No. L-21-1128, 2022-Ohio-2071, ¶ 21.  We follow a three-step process to determine whether the trial court committed plain error: (1) the existence of an error, i.e.,

8.

a deviation from a legal rule; (2) the error must be plain, i.e., the error must be an obvious defect in the proceedings; and (3) the error must have affected the defendant's substantial rights, i.e., the error must have affected the outcome of the proceedings. *State v. Kamer*, 6th Dist. Wood No. WD-20-084, 2022-Ohio-2070, ¶ 121.

{¶ 14} We review the alleged error in light of all admitted evidence and will reverse only in the exceptional circumstance to prevent a miscarriage of justice, i.e., that but-for the error, the outcome of the proceedings clearly would have been different. *State v. Page*, 2018-Ohio-2866, 117 N.E.3d 874, ¶ 18 (6th Dist.) (there must be a reasonable probability the error prejudicially affected the outcome of the trial); *State v. Sneed*, 63 Ohio St.3d 3, 10, 584 N.E.2d 1160 (1992) (notice of Crim.R. 52(B) plain error requires the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice). As we discuss below, we find no plain error as a matter of law with respect to appellant's unmerged, consecutive sentences.

{¶ 15} Merger is a sentencing question, and the defendant bears the burden to establish that R.C. 2941.25 prohibits multiple punishments for a "single" criminal act. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18. Contrary to appellee's argument that appellant waived the issue of merger for failing to raise it with the trial court, the record shows the trial court heard appellant's merger argument for a single sentence of seven to 10 years. We review a trial court's R.C. 2941.25 determination de novo as a question of law. *State v. Williams*, 134 Ohio St.3d

9.

482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1, 12, and 25 (a question of law that involves a consideration of the facts does not turn it into a question of fact).

{¶ 16} We agree that R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibit multiple punishments for the same offense. *Williams* at ¶ 13, citing *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. "At the heart of R.C. 2941.25 is the judicial doctrine of merger; merger is 'the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.'" (Citation omitted.) *Id.* The question of law before the trial court is not whether a particular sentence is justified, but whether the defendant may be sentenced upon all the offenses. *Id.* at ¶ 15, citing *Underwood* at ¶ 27.

{¶ 17} "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at paragraph three of the syllabus. Contrary to appellant's argument, we find the record affirmatively answers the first *Ruff* inquiry, which "makes merger needless." *State v. McAlpin*, Slip Opinion No. 2022-Ohio-1567, ¶ 194; *State v. Earley*, 145 Ohio St.3d 281,

10.

2015-Ohio-4615, 49 N.E.3d 266, ¶ 16. The evidence in the record establishes that appellant went to the victim's house to retrieve either his money or marijuana that he believed the victim had in his possession. He went to the victim's house intending to rob the victim. A beating ensued with a baseball bat. The victim sustained numerous injuries articulated by the trial court. This Robbery constitutes an offense of dissimilar import from Involuntary Manslaughter.

{¶ 18} Further, Roger's rather inartful argument raised for the first time before this court that the victim died from pre-existing poor health issues will not be addressed.

{¶ 19} Upon de novo review, we do not find clearly and convincingly the trial court's determination under R.C. 2941.25 of unmerged, consecutive sentences is otherwise contrary to law. "'[A] defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense.'" *State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, 73 N.E.3d 414, ¶ 128, quoting *Ruff* at ¶ 26. Here, the single victim suffered separate and identifiable harms where appellant's violation of R.C. 2911.02(A)(2), robbery, did not require evidence of the victim's resulting death, as was required for a violation of R.C. 2903.04(A), involuntary manslaughter.

{¶ 20} Appellant's first assignment of error is not well-taken.

11.

## B. Sentence is contrary to law

**{¶ 21}** Appellant asserts as his third assignment of error that his sentence is contrary to law and fails to comply with R.C. 2929.14 and R.C. 2929.144.

**{¶ 22}** In support of his claim in this assignment of error, appellant subdivides his argument into two issues. The first issue claims that the trial court erred in failing to impose an indefinite sentence with stated minimum terms pursuant to R.C. 2929.14 prior to imposing an aggregate consecutive sentence pursuant to 2929.144 (C).

**{¶ 23}** In this case, appellant was sentenced as follows:

1.) On the Involuntary Manslaughter Count #1charge ordered to serve a **Minimum Prison term of 11 years** to the **Maximum Prison term of 24 years 6 months** (Reagan Tokes law);

2.) On Count **#2 Robbery, Felony 2**, in violation of (Emphasis sic.) O.R.C. § **2911.02(A)(2)/(B)**. * * * Defendant is sentenced to the Ohio Department of Rehabilitation and Correction to be imprisoned and confined for a definite sentence of **8 years** of which is Mandatory **0**. * *

The court went on to impose these sentences consecutive to each other and therefore concluded that the total sentence imposed was 1**9 years** to **24 years 6 months** of which **0** is Mandatory. * * * The *Qualifying Offenses(s)* are Count(s) **#1, 2**. The **11** years prison term is the ***Minimum Prison Term*** (Specifications not included). The **19** years prison term is the ***Aggregated Minimum Prison Term*** (combination of all

12.

consecutive indefinite minimum and definite terms).  The **24** years **6** months prison term is the **Maximum Prison Term** (Specifications & PRC time not included). (Emphasis sic.)

{¶ 24} Appellant asserts that the judgment entry does not reflect the trial court's pronouncement when the court stated:

"The Court finds that the appropriate sentence on Count 1, felony of the first degree, the Court imposes the min – the maximum sentence of 11 years; on Count 2, the maximum sentence of 8 years.  The Court finds that consecutive sentence is necessary, that's 19 years, and of course, under the Reagan Tokes, 5 and a half years onto that for the felony of the first degree makes the sentences to be 19 years and 24 ha – 24 and a half years."

{¶ 25} Appellant pled guilty to one count of involuntary manslaughter in violation of R.C. 2903.04(A), which states, "No person shall cause the death of another * * * as a proximate cause of the offender's committing or attempting to commit a felony."  That offense is a first-degree felony under R.C. 2903.04(C).  Appellant also pled guilty to one count of robbery in violation of R.C. 2911.02(A)(2), which states, "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * inflict, attempt to inflict, or threaten to inflict physical harm on another."  A violation of R.C. 2911.02(A)(2) is a second-degree felony under R.C. 2911.02(B).  After a lengthy plea colloquy, the trial court accepted both guilty pleas,

13.

determined they would run consecutively, and sentenced appellant to an aggregate, indefinite sentence between 19 and 24 and one-half years. The foregoing determinations are reflected in the sentencing judgment entry.

{¶ 26} At both the July 12 and July 16 plea hearings, appellant heard the methodology leading to 19 to 24 and one-half years as the potential, indefinite, maximum sentence under the Reagan Tokes Law, if both felonies were made consecutive. The identical information of 19 to 24 and a half years became the indefinite, maximum sentence, and it was relayed at both the August 12 sentencing hearing and in the August 13 journalized sentencing judgment entry.

{¶ 27} We do not find clearly and convincingly that the sentencing "math" employed by the trial court is otherwise contrary to law. The trial court's sentence is within the statutory ranges authorized by the Ohio General Assembly for appellant's offenses, and we do not find any trial court error by adhering to the authorized statutory ranges. *State v. Moore*, 6th Dist. Lucas No. L-21-1033, 2021-Ohio-3995, ¶ 19. R.C. 2929.14(A)(1)(a) authorizes indefinite prison terms for amended Count no. One, a first-degree felony, comprised of two parts: a "stated minimum term," which the trial court referred to as "flat time" or "regular time," within a range from a minimum of three years to a maximum of 11 years, plus an indefinite "maximum term," which the trial court referred to as "tail time," to be determined under R.C. 2929.144(B)(2). Appellant's note of the trial court's reference to a "maximum sentence of 11 years" for amended Count no.

14.

One is a correct reference to the maximum of the range of that portion of his sentencing "math," and the trial court continued.

{¶ 28} Despite appellant's protestations, the trial court's reference to a "maximum sentence of 8 years" for Count no. Two, a second-degree felony, is also a correct reference to the maximum of the range, from a minimum of two years to a maximum of eight years, of that portion of his sentencing "math," i.e., the "flat time" which is the "stated minimum time" pursuant to R.C. 2929.14(A)(2)(a). In this case, there is no "tail" time for Count no. Two pursuant to R.C. 2929.144(B)(2) as a result of the trial court determining that consecutive sentences were necessary under R.C. 2929.14(C)(4).

{¶ 29} In sentencing a defendant to a consecutive sentence for multiple crimes where at least one is subject to an indefinite sentence, a court is required to add all of the indefinite and definite terms that are to be served consecutively and then [under R.C. 2929.144(B)(2)] add half of the longest minimum term or definite term for the most serious felony being sentenced to arrive at the maximum term. *Printke*, 6th Dist. Lucas No. L-21-1233, 2022-Ohio-2981, at ¶ 11. After aggregating the consecutive prison terms imposed of 11 years for the first-degree felony and of eight years for the second-degree felony, or 19 years, the trial court then calculated the maximum, indefinite prison term for the most serious felony, the first-degree felony, by adding one-half of the 11-year prison term. Thus, the maximum, indefinite term for amended Count no. One is 24 and one-half years pursuant to R.C. 2929.144(B)(2). The trial court properly announced the

15.

aggregate, consecutive sentence was an indefinite, maximum prison term between 19 and 24 and one-half years.

**{¶ 30}** Therefore, we find no merit in appellant's argument that the trial court failed to impose a minimum sentence under the statutory scheme.

**{¶ 31}** The second issue raised by appellant in support of his third assignment of error is that the trial court erred in failing to make the requisite findings pursuant to R.C. 2929.144( C)(4)(a) before imposing consecutive sentences.

**{¶ 32}** That section states:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds **any** of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

16.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

(Emphasis added.)

{¶ 33} Thus, R.C. 2929.14(C)(4) requires that the trial court make three specific findings before imposing consecutive sentences, including: (1) that consecutive sentences are necessary to protect the public or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) that R.C. 2929.14(C)(4)(a), (b), or (c) is applicable. *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108, N.E.3d 1028, ¶ 252. "[T]he trial court must make the requisite findings *both* at the sentencing hearing and in the sentencing entry." (Emphasis sic.) *Id.* at ¶ 253.

{¶ 34} Although a "word-for-word recitation of the language of the statute is not required," a reviewing court must be able to discern that the trial court engaged in the correct analysis, and to determine that the record contains evidence to support the trial

court's findings. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29; *State v. Johnson*, 6th Dist., Sandusky No. S-20-033, 2021-Ohio-2254, ¶ 11-12

{¶ 35} In imposing appellant's sentence, the trial court relevantly stated the following at sentencing: "First, it has to look at the need to protect the public from future crimes by this Defendant; then it has to look to punish the Defendant for his activity; then it as to look at deterring that Defendant from doing it again and deterring others in the community from doing that again or future crimes like that."

{¶ 36} The court further stated:

Now, let's look at your past record. You have adjudications for delinquency in Juvenile Court back in '97 and '98.

2001, disorderly conduct.

2001 assault. Victims listed there. You received community control sanctions for that offense.

2002, aggravated burglary. Victims listed there. You received community control sanctions for that. It was revoked and the prison sentence imposed.

2002, drug abuse

2004, complicity to commit trafficking in cocaine and preparation of cocaine for sale. You received a prison sentence for that.

2004, disorderly conduct.

18.

2008, disorderly conduct.

2011, intoxication.

2011, disorderly conduct.

2011, non-support. You received community sanctions for that and were terminated off of community sanctions, which is probation, unsuccessfully.

2013, drug abuse and drug paraphernalia and open container.

2014, trafficking in cocaine and possession of cocaine. You received a prison sentence for that.

2015, disorderly conduct.

{¶ 37} The court then went on to list the numerous misdemeanor offenses for which appellant had been convicted.

{¶ 38} It is obvious from the record that the trial court did engage in an analysis required pursuant to 2929.144(C)(4)(a) before imposing consecutive sentences. The court specifically considered whether consecutive sentences are necessary to protect the public or to punish the offender and (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public. The court articulated the past felony convictions and failure of community control sanctions. The court further went on to consider the appellant's

conduct in his immediate offenses.  Specifically, the court noted the extent of the injuries that appellant inflicted upon this victim:

The Court read through the numerous injuries; abrasions and contusions to the back of the neck, the head, the upper back, forearms, hands, arterial chest wall, right thigh, both legs; fracture of ribs 7 and 9 of the right posterior lateral aspect; right lung with a lobe contusion; fractures of the left distal ulna and right fourth phalange; extensive soft tissue swelling; intramuscular hemorrhages.  The Court read through all that.  * * * Was the Defendant's relationship with the victim, did it facilitate the offense. No doubt. This man died as a result of what you did.  That makes it more serious than not serious.

{¶ 39} Thus, the court in fact specifically considered whether consecutive sentences are necessary to protect the public or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public.

{¶ 40} Thereafter, the court needed to find only one of the R.C. 2929.144(C)(4)(a) through (c) factors.  It obviously considered the appellant's course of conduct in the robbery and beating of the victim resulting in his death, as well as his history of criminal conduct.

20.

{¶ 41} In summary, the record supports the statutory findings necessary to impose consecutive sentences in this case.

{¶ 42} Furthermore, the judgment entry states, "This Court finds Consecutive sentences are applicable based upon factors in R.C. 2929.14 (C) (4)(a)-(c), et seq., or Defendant waived review of those factors by this Court pursuant to the Plea Agreement."

{¶ 43} Although the better course would have been for the trial court to have been more specific in its sentencing judgment entry to reflect the statements made at the sentencing hearing. Nevertheless, we find that the sentencing judgment entry reflects that the trial court did engage in an analysis required pursuant to R.C. 2929.144(C)(4)(a) before imposing consecutive sentences.

{¶ 44} We therefore find appellant's third assignment of error to be without merit.

## C. Ineffective Assistance of Counsel

{¶ 45} In support of his second assignment of error, appellant argues the trial court erred in accepting his guilty pleas to involuntary manslaughter and robbery because of ineffective assistance by his trial counsel. Appellant argues his two guilty pleas were not made knowingly, intelligently, and voluntarily because he did not agree to consecutive sentences, yet his trial counsel stipulated that appellant will serve consecutive sentences. As a result, his trial counsel's plea advice fell below legal standards because the stipulation relating to consecutive sentences was neither required by, nor warranted by, the facts. We disagree.

21.

**{¶ 46}** An ineffective assistance of counsel claim must overcome the strong presumption that a properly licensed Ohio lawyer is competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. Over the course of the trial court proceedings, appellant was represented by two trial counsel. Appellant failed to question the licensure of his trial counsel, so their competence is presumed. In fact, the trial court specifically asked appellant during the July 16 plea colloquy, "Are you satisfied with your attorney, both attorneys' representation in this matter?" Appellant answered, "Yes."

**{¶ 47}** To overcome this presumption of competence, appellant had the burden to show: (1) deficient performance by his trial counsel below an objective standard of reasonable representation, and (2) a reasonable probability of prejudice that but for his trial counsel's errors the outcome would have been different, i.e., he would have gone to trial on four felony counts and not have entered guilty pleas to one original felony, one reduced felony, and dismissal of the third and fourth original felonies. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In making a determination of ineffective assistance of counsel, a reviewing court considers the totality of the evidence before the judge or jury. *Id.* at 695.

**{¶ 48}** Appellant's two guilty pleas are admissions of committing the crimes charged against the defendant and consent to entry of judgment without a trial. Crim.R. 11(B)(1); *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 14.

22.

Unless the defendant asserts his actual innocence when entering a plea of guilty, the defendant "is presumed to understand that he has completely admitted his guilt." *Id.* at ¶ 19.

{¶ 49} Appellant blames his guilty pleas on deficient consecutive sentencing advice from his trial counsel. A defendant entering a plea in a criminal case must do so knowingly, intelligently and voluntarily, and the failure of any one element renders enforcement of that plea unconstitutional. *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 10. The three-part inquiry on appeal is: "(1) has the trial court complied with the relevant provision of [Crim.R. 11(C)]? (2) if the court has not complied fully with [Crim.R. 11(C)], is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17. As discussed below we conclude the trial court complied with the first part of the three-part *Dangler* inquiry, compliance with Crim.R. 11(C)(2),[1] and no further inquiry is required.

{¶ 50} We will first address appellant's argument that his trial counsel's plea advice between the July 12 and July 16 hearings, when the *Earley* stipulation was added, deprived him of "the benefit of an allied offenses argument." However, appellant's trial

---

[1] CrimR. 11(C)(1) does not apply because appellant was represented by counsel at the plea hearing. Crim.R. 11(C)(3) does not apply because appellant did not plead guilty to aggravated murder. Crim.R. 11(C)(4) does not apply because both of appellant's guilty pleas were felony cases.

counsel only stipulated that consecutive sentences are possible as a matter of law, which did not prevent his trial counsel from also arguing that his two guilty pleas should merge into a single sentence between 7 and 10 years.

{¶ 51} The issue of consecutive sentences arose at the July 12 plea hearing, when appellee stated on the record, without objection, the "possible sentence * * * maximum sentence would be 19 to 24 and a half years * * *, if the Court was so inclined, that consecutive sentences would be appropriate or it's within the rights of the Court to do that. In other words, it's not barred by law."

{¶ 52} The consecutive sentencing stipulation was then raised during the July 16 plea hearing. The trial court announced, "It is also my understanding that as part of the negotiated plea agreement, that the parties agree and/or stipulate that the [sic] consecutive sentence may be imposed by the Court pursuant to Ohio Supreme Court case, *State v. Earley*, 145 Ohio St.3d 281." The lack of consent to mandating consecutive sentences specifically arose later regarding appellant's written plea agreement:

> Court: On page 3 of 5, counsel, under the recommended sentence, it says, number two: If the recommended sentence requires imposition of consecutive sentence, I agree to the imposition of a consecutive sentence, I agree to the imposition of that sentence, waive any statutory -- there's no requirement, and I don't think he's waiving the review –
>
> Prosecutor: Correct.

24.

Court: -- because there's no agreed consecutive. I think the State's arguing consecutive or maybe asserting that, and the victims maybe, but I don't think there's a recommendation of that, correct?

Trial Counsel: Correct, Your Honor.

Prosecutor: Right.

Court: So I'm going to put N, slash, A for that one. Okay. At this point, Mr. Rogers, one last time. Before I accept your plea, do you have any questions of this Court at all, sir?

A: No, sir.

{¶ 53} The parties are free to present stipulations to the court, where a stipulation is a voluntary agreement concerning the disposition of a relevant point to a matter that obviates the need for proof of that point. *State v. Martin*, 6th Dist. Lucas No. L-01-1214, 2002 WL 597332, *2 (Apr. 19, 2002). However, the record shows appellant's trial counsel did not stipulate either to consecutive sentences or, alternatively, to nonmerger of the offenses, and the stipulation is not a part of the trial court's sentencing judgment entry. Even if appellant's trial counsel had stipulated that *Earley* mandated the trial court to impose consecutive sentences, that stipulation did not prejudice appellant because a stipulation to a legal conclusion or what the law requires is not binding on the trial court. *Ohio State Bar Assn. v. Pro-Net Financial, Inc.*, Slip Opinion No. 2022-Ohio-726, ¶ 26.

**{¶ 54}** We next turn to whether the trial court complied with Crim.R. 11(C)(2), which states:

In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty * * * without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * *, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶ 55}** At the July 16 plea hearing, the trial court conducted a lengthy plea colloquy with appellant to ascertain whether appellant offered the guilty pleas knowingly, voluntarily, and intelligently.

> I'm going to ask you some questions. They're not designed to trick you or confuse you. They're designed so you understand the ramifications of your plea and this Court can determine if that plea is knowingly, voluntarily, and intelligently given. If during these proceedings you don't understand my questions or you're confused, get your attorney's attention or mine so we can make sure you understand what's happening.

**{¶ 56}** Appellant assented on the record. The trial court asked appellant, "You heard the plea agreement here today. Do you have any questions about that?" Appellant answered, "No." The trial court then asked appellant, "Do you understand the nature of the charges you're pleading guilty to?" Appellant answered, "Yes." Later, the trial court asked appellant, "Has there been anything said off the record, outside of the Courtroom, about this plea agreement you think this Judge should know about?" Appellant answered, "No, sir." The trial court asked appellant, "Did anyone promise you, offer you, or guarantee you anything in exchange for this plea?" Appellant answered, "No." The trial court asked appellant, "Did anyone force you, coerce you, threaten you, or place you under duress in entering this plea?" Appellant answered, "No."

27.

{¶ 57} The record shows at the hearing the trial court also systematically reviewed the Crim.R. 11(C)(2) factors, including each right identified in *Dangler* and Crim.R. 11(C)(2)(c). After each explanation, the trial court asked appellant, "Do you understand that right?" Appellant answered, "Yes." The trial court then asked appellant each time, "Do you want to give up that right?" and appellant answered, "Yes." In addition to confirming that appellant's trial counsel was not recommending consecutive sentences, the trial court specifically reviewed in detail the potential, indefinite sentence ranges under the Reagan Tokes Law resulting in an aggregate prison term of 19 to 24 and one-half years if consecutive sentences were ordered and asked appellant, "Questions on any of it?" Appellant answered, "No." Finally, the trial court asked appellant, "Before I accept your plea, do you have any questions of this Court at all, sir?" Appellant answered, "No, sir."

{¶ 58} We do not find ineffective assistance by appellant's trial counsel. Appellant's Crim.R. 11(C) rights were addressed by the trial court, appellant was satisfied with the advice he received from his trial counsel, and appellant's two guilty pleas were unrelated to his trial counsel's stipulation to *Earley* or to any "mandatory" consecutive sentencing.

{¶ 59} Appellant's second assignment of error is not well-taken.

28.

## D. Constitutionality of R.C. 2967.271

{¶ 60} In support of his fourth assignment of error, appellant argues the trial court erred by denying his motion challenging the constitutionality of R.C. 2967.271, a part of the Reagan Tokes Law. Appellant argues R.C. 2967.271 violates both the Separation of Powers Doctrine and the Due Process Clause of the United States Constitution for two reasons: (1) the actual indefinite sentence he serves will depend on the executive branch determining, not the judicial branch, whether appellant "committed a violation of law"; and (2) his presumptive minimum sentence under R.C. 2967.271(B) is a liberty interest inadequately protected by R.C. 2967.271(C) and (D). We disagree.

This court has recently addressed the constitutionality of the Reagan Tokes Law. In *Stenson*, rejecting the argument that the ODRC's ability to rebut the presumptive minimum sentence violates the separation of powers doctrine, we found that like the discretionary system of parole and postrelease control controlled by the parole board and found constitutional, the ODRC has the ability to extend the minimum sentence of a defendant up to but not exceeding the maximum sentence that was imposed by the court. Next, we agreed that due process rights are implicated by the liberty interest created by the presumption that the offender serve the stated minimum prison term. However, we concluded that R.C. 2967.271 does not, on its face, violate the constitutional right to due process because even

though the specific procedures for the applicable "hearing" are not set forth in the law itself, the law may ultimately be applied in a manner that is not unconstitutional. (Citations omitted.)

*Printke*, 6th Dist. Lucas No. L-21-1233, 2022-Ohio-2981, at ¶ 7.

{¶ 61} We do not find clearly and convincingly appellant's sentence is otherwise contrary to law. Appellant's fourth assignment of error is well-taken, in part.

### III. Conclusion

{¶ 62} On consideration whereof, the judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24(A)(4).

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.      _____
                 JUDGE

Thomas J. Osowik, J.

               _____
Christine E. Mayle, J.        JUDGE
CONCUR.

               _____
                 JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.