[Cite as *State v. Lawrence*, 2025-Ohio-84.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                              Court of Appeals No.  E-23-037

     Appellee                                          Trial Court No.  2022-CR-0003

v.

Dezmon Lawrence                                   **DECISION AND JUDGMENT**

     Appellant                                         Decided:  January 10, 2025

* * * * *

Kevin J. Baxter and Kristin R. Palmer, for appellee.

Anthony J. Richardson, II, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1}  This is an appeal of an August 22, 2023 judgment of the Erie County Court of Common Pleas, convicting appellant, following a jury trial, of one count of abduction, in violation of R.C. 2905.02(A), a felony of the third degree, one count of assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree, possession of fentanyl, in violation of R.C. 2925.11(A), a felony of the third degree, trafficking in fentanyl, in violation of R.C. 2925.03(A), a felony of the third degree, possession of tramadol, in

violation of R.C. 2925.11(A), a misdemeanor of the first degree, and trafficking in tramadol, in violation of R.C. 2925.03(A), a felony of the fifth degree.

{¶ 2} Appellant was sentenced to a 30-month term of incarceration on the abduction conviction, a six-month term of incarceration on the assault conviction, and a merged, total term of incarceration of 24-months encompassing the drug offenses. The abduction sentence and merged drug sentence were ordered to be served consecutively to one another, and concurrently to the assault sentence, equaling a 54-month total term of incarceration, ordered to be served concurrently with the sentence imposed in a recent Lorain County drug offenses case. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 3} Appellant, Dezmon Lawrence, sets forth the following three assignments of error:

"(1) REVERSIBLE ERROR OCCURRED BECAUSE THE CONVICTIONS FOR ABDUCTION AND ASSAULT WERE NOT MERGED.

"(2) REVERSIBLE ERROR OCCURRED BECAUSE THERE WAS INSUFFICIENT, COMPETENT CREDIBLE EVIDENCE TO SUPPORT THE CRIMES CHARGED.

"(3) REVERSIBLE ERROR OCCURRED BECAUSE UNFAIR, IMPERMISSIBLE CHARACTER EVIDENCE OR EVIDENCE OF PRIOR BAD ACTS WAS ADMITTED OVER OBJECTION."

2.

{¶ 4} The following undisputed facts are relevant to this appeal. This case stems from events occurring during a stay by appellant and his then-girlfriend, A.B., at a Perkins Township hotel with a history of unlawful incidents and law enforcement action. While the record shows that the parties were in a relationship at the time of these events and that A.B. voluntarily went with appellant to the hotel, it is the succeeding evolution of events and circumstances that underlie this appeal.

{¶ 5} Appellant, whose criminal history predominantly consists of drug offenses, supplied fentanyl and tramadol for their consumption during their stay at the hotel. The day after they checked in, A.B. advised appellant that she wanted to leave following several conflicts and a heated argument occurring between them. Appellant adamantly opposed her departure, and acted with an objective to prevent it. Appellant grabbed A.B.'s personal possessions and stood on top of them, so as to preclude her retrieval of them and frustrate her intended departure.

{¶ 6} When A.B. nevertheless darted for the hotel room door, appellant grabbed her by her neck and threw her against the wall. In response, A.B. got out pepper spray and attempted to incapacitate appellant with pepper spray in order to escape the room, but she accidentally pepper sprayed both appellant and herself and was unable to make her escape.

{¶ 7} Following the pepper spray incident, the fracas later subsided and appellant offered to take A.B. to a nearby store to purchase milk to apply in an effort to alleviate

3.

the effects of the pepper spray that they were experiencing. A.B. concealed her mobile phone in her pants prior to their departure for the store.

{¶ 8} As they were driving out of the hotel parking lot, A.B. attempted to escape from appellant's moving vehicle. In response, appellant leaned across the front seat, grabbed the passenger door handle, held it, and accelerated the gas, all of which was done to prevent A.B.'s escape. An eyewitness, another hotel guest, observed these events in the parking lot, became concerned, and called 9-1-1. A.B. was later able to call the hotel's front desk from her mobile phone while appellant was in the store buying milk. She reported that she was being held against her will in room 140, and she asked the desk clerk to call the police on her behalf. The front desk clerk who fielded A.B.'s call immediately called the police and reported the situation.

{¶ 9} Officer Elizabeth Thayer ("Thayer") of the Perkins Township Police Department was dispatched to the hotel in response to the two calls received for emergency assistance, the first call from the eyewitness in the parking lot, and the second call from A.B. Upon arrival, Thayer spoke with the eyewitness, the desk manager, and then observed appellant's vehicle, which matched the description provided by the eyewitness, driving into the hotel parking lot.

{¶ 10} Thayer noted, upon approaching appellant's vehicle, that A.B. was visibly emotional, shaking, and crying. Thayer removed A.B. from the presence of appellant so that she could speak freely about the situation. A.B. stated that appellant had been physically striking her over the past few days in their hotel room, he would not let her out

4.

of his sight, he would not allow her to leave their hotel room, he had confiscated her mobile phone, which she later retrieved when he was distracted, and he choked her, pulled her hair, and threw her against the wall of the hotel room, each time that she attempted to run towards the door to leave. A.B. further stated that appellant was in possession of fentanyl and tramadol. Lastly, A.B. acknowledged that she was in possession of marijuana, and that she fought back against appellant while trying to defend herself.

{¶ 11} At this juncture, Thayer photographed A.B.'s injuries, including a swollen lip, bruising on her face and chin, significant redness and bruising on her neck, and bruising on her legs and inner thighs. A.B. was taken by ambulance to Firelands Medical Center, treated for her injuries, and then taken back to the hotel to retrieve her possessions.

{¶ 12} After their return to the hotel, Thayer took into evidence a plastic baggie containing white drugs, as well as distinctive blue pills, with an "M" in printed on one side of the pills, and the number "30" imprinted on the other side of the pills. Subsequent BCI testing determined that the plastic baggie contained approximately 10g of fentanyl and that the pills were tramadol. Identical pills, with identical markings, were recovered and determined to belong to appellant in appellant's above-referenced, separate Lorain County drug convictions, during which appellant's then-girlfriend died of a fatal fentanyl overdose, the fact of which was excluded from trial in this case via an Evid.R. 404(B) ruling.

5.

{¶ 13} Following the law enforcement investigation of these events, appellant was indicted on one count of kidnapping, in violation of R.C. 2905.01(B), a felony of the first degree (Count 1), one count of abduction, in violation of R.C. 2905.02(A), a felony of the third degree (Count 2), one count of felonious assault, in violation of R.C. 2903.11(A), a felony of the second degree (Count 3), one count of possession of fentanyl, in violation of R.C. 2925.11(A), a felony of the third degree (Count 4), one count of trafficking in fentanyl, in violation of R.C. 2925.03(A), a felony of the third degree (Count 5), one count of possession of tramadol, in violation of R.C. 2925.11(A), a misdemeanor of the first degree (Count 6), and one count of trafficking in tramadol, in violation of R.C. 2925.03(A), a felony of the fifth degree (Count 7).

{¶ 14} On November 7, 2022, a jury trial was conducted. The trial court heard detailed testimony from the responding officers of the Perkins Township Police Department, the assigned BCI analyst, the hotel front desk employee who fielded A.B.'s call for emergency assistance, the responding paramedic, A.B., and from the narcotics detective with the Elyria Police Department who handled appellant's drug offenses in Lorain County entailing drugs with identical imprinted markings. Appellant presented no witnesses.

{¶ 15} On November 10, 2022, appellant was found guilty on one count of abduction, one count of the lesser offense of assault, one count of possession of fentanyl, one count of trafficking in fentanyl, one count of possession of tramadol, and one count of trafficking in tramadol. The jury entered an acquittal on the kidnapping count. On

6.

January 3, 2023, the trial court held a sentencing hearing at which the state elected to proceed to sentencing on the abduction count and the trafficking in fentanyl count, after arguing all the drug counts merged for purposes of sentencing, and after stating that the misdemeanor assault count merged with the felonies. The trial court sentenced appellant to a prison term of 30 months as to abduction and a prison term of 24 months as to trafficking in fentanyl, and ordered the sentences to run consecutively to each other, and consecutively to the Lorain County prison term. Although the trial court found that the drug counts merged, the court did not address disposition as to the lesser offense of assault in Count 3 or the trafficking offense in Count 7 in its judgment entry.

{¶ 16} Upon appeal of the judgment, we remanded the matter to the trial court to address disposition of Counts 3 and 7.

{¶ 17} On August 22, 2023, the trial court held a resentencing hearing. Appellant's trial counsel argued in favor of merger of the misdemeanor drug possession count, but argued that the misdemeanor assault count was not an allied offense to abduction. Trial counsel asked that the sentence for assault "run concurrent with the abduction charge." After considering counsel's argument, appellant was again sentenced to a 54 month total term of incarceration. The trial court imposed a 30-month prison term as to Count 2, abduction, a six-month jail term as to Count 3, assault, and a 24-month prison term as to Count 5, trafficking in a fentanyl-related compound. The trial court ordered the sentences in Counts 2 and 5 to be served consecutively to each other, and concurrently to the sentence imposed in Count 3, for an aggregate sentence of 54 months.

7.

The trial court ordered this sentence to be served concurrently to the sentence imposed in Lorain County. This appeal ensued.

{¶ 18} In the first assignment of error, appellant argues that the trial court erred in merging only the drug offenses for sentencing purposes, and not likewise merging the abduction and assault offenses for sentencing purposes, premised on the notion that the abduction and assault offenses arose from the same act. This position is contrary to appellant's argument in the trial court, as trial counsel acknowledged that the two counts did not merge in advocating for concurrent sentences. Thus, our review of this matter is limited to considering only plain error. *State v. Scott*, 2024-Ohio-5849, ¶ 95 (6th Dist.) ("Where, as here, an allied-offense challenge is not properly preserved in the trial court, we review the matter for plain error."). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 19} R.C. 2941.25(A) establishes, "[W]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

{¶ 20} As this court held in *State v. Turvey*, 6th Dist. Lucas, 2023-Ohio-2248, 220 N.E.3d 968, ¶ 107-108,

> R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the
> Fifth Amendment to the United States Constitution and Section 10, Article

8.

1 of the Ohio Constitution, which prohibits multiple punishments for the same offense. *State v. Rogers*, 6th Dist. Erie-21-027/031, 2022-Ohio-4126, 2022 WL 17076596, ¶ 16 * * * The test for determining whether allied offenses should be merged is well established: As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions [to conclude] whether defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable. *Ruff*, at ¶ 23.

{¶ 21} In support of the first assignment of error, appellant summarily concludes,

"[T]he same acts for which [appellant] was alleged to have committed assault, i.e., fighting with A.B., are the same acts and course of conduct for which he was convicted of abduction." The record of evidence rebuts appellant's position.

{¶ 22} The transcripts of the trial proceedings reflect that appellant's actions constituting assault occurred within Room 140 of the Wolf Inn, while appellant's separate, subsequent acts constituting abduction occurred within appellant's motor vehicle during the trip to the store to purchase milk to alleviate the pepper spray symptoms being experienced by the parties.

{¶ 23} A.B.'s trial testimony regarding the assault, as collaborated by Thayer's testimony, the paramedic's testimony, and photographic evidence of A.B.'s injuries, stated in relevant part:

"When I wanted to leave, he did not want me to leave. He threw my things on the floor and stepped on them * * * And when I went to go to the door, *he grabbed me by my*

9.

*neck and threw me back against the wall* * * * I grabbed the pepper spray and tried to pepper spray. I ended up pepper spraying both of us * * * *I was trying to leave and he grabbed me by my throat. Pushed me up against the wall right next to the bathroom* * * *[H]e was* * * *choking me.*" (Emphasis added).

{¶ 24} A.B.'s trial testimony regarding the abduction, as collaborated by Thayer's testimony and the eyewitness's testimony, stated in relevant part:

"*[H]e had, like, a tight arm on me* * * *I tried to, like, kind of step away a couple of times, like, and he kept making sure I got in the car* * * *I saw the guy walking in front by the pool and I'm screaming and opening the door trying to jump out [of the car]. And every time I did, he grabbed me and floored the gas so I couldn't get out of the car.*" (Emphasis added).

{¶ 25} During Thayer's testimony, the trial court reviewed the body cam video footage of Thayer's interaction with A.B. upon her dispatch to the hotel. Thayer testified, when asked to elaborate on the photographic evidence and the body cam recording, "[A.B.] said the defendant choke slammed her * * *with his arm * * * and threw her into the [wall of] the hotel room * * * [Appellant then] wouldn't let her out of the car." Thayer next testified that when she was attempting to commence questioning of A.B., appellant, "[W]as trying to stay in between her and I. Not letting her speak * * * I needed to get her separated from him."

{¶ 26} The responding paramedic who treated A.B. at the scene testified, "There's no immediate life-threatening injuries that we saw * * * She told us that she had been struck in the head and after that she had been strangled or choked * * * Vital signs were within normal limits and we transported her [to Firelands for medical treatment]."

{¶ 27} The record contains considerable, unrefuted evidence reflecting that appellant physically assaulted A.B. in Room 140 of the Wolf Inn during her attempts to

10.

leave the hotel room, and that appellant subsequently, separately physically restrained A.B., held onto her door handle, and accelerated the gas pedal, all done in order to prevent A.B. from escaping out of appellant's moving vehicle as he was driving out of the hotel parking lot, and as witnessed by a hotel guest present in the hotel parking lot at the time of the events. Given these facts and circumstances, we find that that this is not the exceptional case, warranting reversal to prevent injustice. *Scott*, 2024-Ohio-5849, at ¶ 96 (6th Dist.); citing *Long*, 53 Ohio St.2d 91, at paragraph three of the syllabus (additional citation omitted.). Wherefore, we find appellant's first assignment of error not well-taken.

{¶ 28} In appellant's second assignment of error, appellant asserts that the convictions were not supported by a sufficiency of the evidence. In support of this assignment, as related to the drug convictions, appellant summarily concludes, without evidentiary support, that "A.B. was the possessor of any drugs found * * * It seemed that perhaps A.B. was on a mission to manipulate the circumstances and ensure [appellant's] arrest and prison time sanction" Regarding the abduction conviction, appellant summarily concludes, "There was no evidence to support that [appellant] restrained the liberty of A.B." Lastly, as related to the assault conviction, appellant summarily concludes that, "[T]here was no competent, credible evidence to support that he committed the crime."

{¶ 29} As this court held in *State v. Stevens*, 2023-Ohio-343, ¶ 131 (6th Dist.),

> The Supreme Court of Ohio has stated that the term sufficiency of the evidence presents a question of law as to whether the evidence is legally

adequate to support a jury verdict as to all elements of the crime. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a sufficiency of the evidence claim, the relevant inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 30} As pertains to the drug offenses, appellant appears to conjecture, devoid of evidentiary support, that the fentanyl and tramadol recovered from the hotel room, underlying the drug convictions in this case, belonged to A.B. By contrast, the record reflects that appellant has a criminal history that includes analogous drug convictions, including a recent Lorain County drug case in which appellant's convictions stemmed from appellant's possession of pills with "M" and "30" markings imprinted on the pills, identical to the imprinted markings on the pills in the instant case, and that A.B. gave unrefuted testimony that the fentanyl and tramadol present in the room belonged to appellant, while acknowledging that that the marijuana present belonged to her. The record contains no evidence of any kind rebutting A.B.'s testimony that the fentanyl and tramadol belonged to appellant. Appellant's conjecture that because A.B. admitted that the marijuana belonged to her, it must therefore be construed that the other drugs recovered likewise belonged to her has no basis in fact and no foundation in the record.

{¶ 31} As pertains to the abduction offense, the record plainly refutes appellant's unilateral conclusion that, "[T]here was no evidence to support that [appellant] restrained the liberty of A.B." Countermanding appellant's position, A.B. gave unrefuted testimony that, "I'm screaming and opening the [car] door and trying to jump out. And every time I

12.

did, [appellant] grabbed me and floored the gas so I couldn't get out of the car." In addition, A.B.'s abduction testimony is bolstered by the unrefuted testimony of Thayer, the responding officer, who testified that one of the two 9-1-1 calls regarding the incident at the hotel came from another hotel guest who witnessed appellant driving through the parking lot preventing his passenger from exiting the vehicle. Thayer testified that, "We got a call from Otis Campbell saying he believed [a woman] was needing help [in the Wolf Inn parking lot] * * * It sounded like she was in a vehicle with someone else and wanting to get out." The record contains unrefuted testimony from multiple witnesses supporting the abduction conviction.

{¶ 32} As pertains to the assault offense, the record likewise plainly refutes appellant's unilateral conclusion that, "There was no competent, credible evidence to support" the assault conviction. Countermanding appellant's position, A.B. gave unrefuted testimony that, "When I went to go to the [hotel room] door, he grabbed me by my neck and threw me back against the wall * * * Every time [I tried to leave] he grabbed me by my neck. Every time * * * [H]e grabbed me by my throat. Pushed me up against the wall." In addition, A.B.'s assault testimony is bolstered by the unrefuted testimony of Thayer, the responding officer who testified that, "[A.B.] said [appellant] choke slammed her and threw her in the hotel room." The trial court also had numerous photographs of the victim's bruises and injuries, taken shortly after they were inflicted, and consistent with the testimony taken by Thayer prior to the victim's transport to Firelands Regional Medical Center for treatment. The record contains unrefuted

13.

testimony from multiple witnesses supporting the assault conviction, as well as supporting photographs and medical reports.

{¶ 33} We have carefully reviewed the record of evidence, with particular scrutiny to the transcripts of the trial proceedings and accompanying exhibits. We find that, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the drug, abduction, and assault offenses legally adequate to support the convictions. We find appellant's second assignment of error not well-taken.

{¶ 34} In appellant's third assignment of error, appellant contends that the trial court erred in the restricted, limited admission of evidence of appellant's separate drug offenses that had recently occurred in Lorain County.

{¶ 35} Evid.R. 404(B) establishes, in relevant part, "Evidence of other crimes, wrongs, or acts * * * may * * * be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 36} This dispute centers upon appellee's Evid.R. 404(B) notice to the trial court of the intent to call a narcotics detective with the Elyria Police Department to testify regarding appellant's recent Lorain County drug convictions for limited, permitted purposes. In objecting, appellant stated, "I would just like to lay my objection down * * * He's trying to bring in prior bad acts * * * [Appellant's] prior girlfriend in that incident had passed away from a drug overdose." Appellee unequivocally responded, "I'm not

14.

intending to get that in." Appellant further argued, "I believe that the state is going to allege that the pill that was found in the [hotel] room marked M-30 was the same type of pill * * * that was marked M-30 * * * that [appellant] has been convicted of trafficking in Lorain County. I would argue that I think that evidence is prejudicial and improper." Appellee rebutted that, "It [has] to do with ownership, preparation, plan. The permitted uses for 404(B) evidence." The trial court determined, "I'll allow it, but [for those] limited [permitted purposes]." Consistent with the trial court's evidentiary ruling, the Elyria narcotics detective was not permitted to testify regarding the amounts of drugs involved in the Elyria cases or the fact that appellant's then-girlfriend died of a fatal drug overdose in the events underlying those cases.

{¶ 37} The Elyria detective was presented with photographic evidence of the pills in both cases, and confirmed that they had identical markings, with an "M" imprinted on one side of the pills, and the number "30" imprinted on the other side of the pills. The detective testified that the identically marked pills in the Lorain County cases were tested and verified to be fentanyl. The record shows that the disputed testimony was restricted to the permissible purposes of ownership, preparation, and plan based upon the distinct markings present in both cases. Appellant presents no evidence, beyond conjecture, that the disputed testimony prejudicially swayed the jury. Accordingly, it constitutes permissible Evid.R. 404(B) testimony. Wherefore, we find appellant's third assignment of error not well-taken.

15.

**{¶ 38}** On consideration whereof, the judgment of the Erie County Court of Common Pleas is hereby affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgement affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.